Oswald **BERRIOS**, M.D.,
Plaintiff,

v.

**MEMORIAL HOSPITAL, INC.**,
et al., Defendants.

No. CIV-2-74-191.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Sept. 29, 1975.

John L. Kiener, Johnson City, Tenn., for plaintiff.

J. Paul Coleman, and Walter L. Price, Johnson City, Tenn., for defendants.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is a civil action by the plaintiff Dr. Berrios for money damages and for reinstatement to his right to practice his profession of anesthesiology at the defendant hospital. The jurisdiction of this Court is alleged under 28 U.S.C. §§ 1331, 1343, 42 U.S.C. § 1983, and 15 U. S.C. § 4. The defendants each moved, *inter alia,* to dismiss this action for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Federal Rules of Civil Procedure, which, as to the civil rights claim, will be treated as a motion for a summary judgment and disposed of as provided in Rule 56, Federal Rules of Civil Procedure. See order of June 25, 1975 herein.

■ The defendants contend that any action taken by the defendant hospital or any of the individual defendants in their respective capacities, as hospital officials, was purely private action and therefore not under color of state law and not subject to the mandate of 42 U. S.C. § 1983. On the other hand, the plaintiff contends that the defendant hospital had taken on such a public nature so as to be subject thereto. Therefore, the question to be decided is, whether the action by any defendant in terminating the plaintiff's staff privileges at the defendant hospital was "state" action. As has been stated:

\* \* \* \* \* \*

We do not suggest that the presence of state action in this case or in any case can be determined by the application of some clear-cut test. Rather, as noted by the Supreme Court in *Burton v. Wilmington Parking Authority,* \* \* \* [(1961)] 365 U.S. at 722, [6 L.Ed.(2d) at 50,] 81 S.Ct. at 860, "to fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an 'impossible task' which 'This Court has never attempted.' *Kotch v. Board of River Port Pilot Comm'rs,* 330 U.S. 552, 556, [67 S.Ct. 910, 912, 91 L.Ed. 1093]. Only by sifting facts and weighing circumstances can the non-obvious involvement of the State in private conduct be attributed its true significance."

\* \* \* \* \* \*

*O'Neill v. Grayson County War Memorial Hospital,* C.A. 6th (1973), 472 F.2d 1140, 1143[1].

Pursuant to this Court's order of June 25, 1975 herein, the respective parties have stipulated facts deemed determinative of this question. Among these are: (1) At the pertinent times, the defendant hospital was the only general hospital operating in Washington County, Tennessee. (2) The membership of such hospital consists of all persons, corporations, etc. contributing $100.00 or more to the capital fund of the corporation. (3) The directors thereof are elected by the members. (4) Each director must be a member. (5) Eleven directors must be residents of Johnson City, Tennessee and the remaining four directors must be residents of Washington County, Tennessee. (6) The defendant hospital acquired the property upon which it is located by purchase from various and sundry individuals. (7) From 1950 until 1968, the hospital received a total of $2,725,852.93 for construction purposes under the Hill-Burton Act. No funds have been so received since 1968. (8) During the period Dr. Berrios was on the staff of the hospital, $758,818.86 was received from Medicare-Medicaid. (9) During the 5-year period preceding the termination of Dr. Berrios' staff privileges, $8,648,743.00 was received from Medicare-Medicaid. (10) During the period Dr. Berrios was on the staff: no funds were received from the State of Tennessee; the City of Johnson City, Tennessee contributed $10,000.00 and Washington County, Ten-

nessee contributed $9,506.90 as part payment for indigent care; and the costs of indigent care to the hospital were $283,684.78. During the immediately aforementioned period, the total operating costs of the hospital were $8,556,308.35, of which $7,777,892.59 was paid by patients, the remainder being the $758,818.86 received through Medicare-Medicaid and the $19,506.90 received from the City of Johnson City and Washington County.

There appear to be no disputed facts applicable to the resolution of this question, although respective counsel were allowed ample time to present same. See order of June 25, 1975 herein. By sifting through the stipulated facts and weighing the circumstances, this Court concludes that there was not such significant state action present herein so as to transform the actions of the defendant hospital from "private" to "public".

" * * * State involvement sufficient to transform a 'private' university into a 'State' university requires more than merely chartering the university [citation omitted]; providing financial aid in the form of public funds [citation omitted]; or granting of tax exemptions [citation omitted]. * * * " *Blackburn v. Fisk University*, C.A.6th (1971), 443 F.2d 121, 123[1]. Although the foregoing dealt with the actions of a university, such language was considered "relevant to and dispositive of" an attempt to make private hospitals into public or state institutions. *Place v. Shepherd*, C.A.6th (1971), 446 F.2d 1239, 1245[3].

In *Jackson v. Norton-Children's Hospitals, Inc.*, C.A.6th (1973), 487 F.2d 502, the Court upheld the dismissal of the complaint, which alleged that the plaintiff doctor's civil rights were violated when he was discharged from the defendant hospital's staff, " * * * notwithstanding the receipt by the hospital of Hill-Burton funds and the existence of state regulations governing hospitals. * * * " *Ibid.* at 503[1]. " * * * Whenever state action has been discovered in the activities of an ostensibly private hospital something more than a partial federal funding is involved. * * * " *Ibid.* For example, in *O'Neill v. Grayson County War Memorial Hospital, supra*, the Court found, not only that the hospital was the only hospital in the county and that it was financed in part by Hill-Burton funds, but also that it operated under a 15-year lease from the county fiscal court in exchange for $1.00 consideration and the hospital's agreement to fulfill all responsibilities incident to the operation of a hospital. Also, in *Meredith v. Allen County War Memorial Hospital Com'n*, C.A.6th (1968), 397 F.2d 33, 35[2, 3], the Court emphasized that the defendant commission members were appointed by the county fiscal court to operate the hospital. The Court specifically held that " * * * [b]ecause the members of the commission hold office as a result of governmental appointment and because they administer a public facility, their actions must be regarded as having been taken under color of law. * * * " *Ibid.* at [2]. Finally, in *Chiaffitelli v. Dettmer Hospital, Inc.*, C.A.6th (1971), 437 F.2d 429, 430[1], four of the nine members of the hospital's board of governors were, under the hospital's charter, responsible to the public, *i. e.* " * * * four [were] appointed by the Miami County Commissioners, and the fifth is the Judge of the Common Pleas Court of Miami County. Under applicable case law, this is enough to give the hospital the character of a public agency. * * * " *Ibid.* There are no distinguishing factors herein, other than a partial funding by various governmental bodies, to render the defendant hospital a public or state institution. Therefore, the defendants' motion for a summary judgment as to any claim of a denial of civil rights hereby is granted.

The defendants also moved to dismiss for lack of jurisdiction over the subject matter, Rule 12(b)(1), Federal Rules of Civil Procedure, insofar as the complaint alleges a claim under 28 U.S.

C. § 1331 and the Constitution, Fourteenth Amendment. There is merit to such motion.

" * * * It is well settled that a case may be said to arise under the Constitution or laws of the United States whenever its correct decision depends upon the construction of either, or when the title or right set up by the party may be defected by one construction of the Constitution or law of the United States, and sustained by the opposite construction. * * *" *Shelby County, Tennessee v. Fairway Homes, Inc.*, C.A.6th (1961), 285 F.2d 617, 618[1]. " * * * 'A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends.' [citations omitted.] * * *" *Ibid.* at [2]. There being no real or substantial dispute or controversy respecting the validity, construction, or effect of any law, the defendants' motion to dismiss for lack of jurisdiction over the subject matter as to any alleged claim under 28 U.S.C. § 1331 and the Constitution, Fourteenth Amendment hereby is granted.

The plaintiff alleges also a claim based upon the federal antitrust laws. Although he seeks to invoke the jurisdiction of this Court thereunder upon the provisions of 15 U.S.C. §§ 4, 5, he failed to specify the provisions of those statutes which he claims were violated by the defendants. Within 10 days herefrom, unless the plaintiff has supplied a more definite statement of such claim, *cf*. Rule 12(e), Federal Rules of Civil Procedure, this action will thereafter stand dismissed as to such claim also.