Lucille C. PLACE, Plaintiff-Appellant,
v.
Mrs. Mary C. SHEPHERD et al.,
Defendants-Appellees.

No. 20622.

United States Court of Appeals,
Sixth Circuit.

Aug. 17, 1971.

C. M. Murphy, Memphis, Tenn., on brief for plaintiff-appellant.

Elmore Holmes, III, Memphis, Tenn., for Baptist Memorial Hospital, Inc.; Armstrong, Allen, Braden, Goodman,

McBride & Prewitt, Memphis, Tenn., of counsel.

Armistead F. Clay, Memphis, Tenn., for Methodist Hospital, Inc.; Pittman, Clay, Morgan, Cole & Gilliland, Memphis, Tenn., of counsel.

Arthur J. Shea, Asst. City Atty., Memphis, Tenn., for Mrs. Mary G. Shepherd; James M. Manire, City Atty., on brief.

Margaret Wilkinson, Memphis, Tenn., for Tennessee Nurses Association, Inc.

Before BROOKS and KENT, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Plaintiff appeals from dismissal by the United States District Court for the Western District of Tennessee, Western Division, of her complaint against the named defendants. The District Judge held that the complaint did not state any cause of action. The Civil Rights Statute, 42 U.S.C. § 1983 and § 1985(3) and the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2, and the Clayton Act, 15 U.S.C. § 15, are the alleged bases for the claim of a cause or causes of action. 28 U.S.C. §§ 1337 and 1343 are relied upon for Federal jurisdiction.

The case presents another variety of the ever-increasing attempts to get into Federal Court by labelling real or imagined wrongs as deprivations of Civil Rights guaranteed by the United States Constitution.

Plaintiff, Lucille C. Place, was graduated and licensed as a registered nurse in 1942. After working in such profession for less than two years, she left it for about twenty years. In 1963 she re-entered the profession as a nurse at Rosewood Convalescent Center, in Memphis, Tennessee. In 1964 she left that employment and was accepted by the Nurses Registry, an agency of defendant Tennessee Nurses Association. Thereafter she worked at the Baptist Memorial Hospital, the Methodist Hospital and the John Gaston Hospital, all located in Memphis, Tennessee. John Gaston Hospital is owned by the City of Memphis, but is not named as a defendant. From the complaint, it would appear that plaintiff was continuously dissatisfied with how the hospitals were run and with their treatment of her as a nurse employee. She avers that she took part in activities designed to improve the operation of the named hospitals. One paragraph of her complaint says:

"15. During the said period from May to November of 1964, in the Baptist Hospital, plaintiff noticed that many of the hospital patients were treated by unqualified people; the nurses seldom worked on the same floor twice, and thus never got to know their patients; the spirit to help the patient was almost entirely lacking; there was no leadership at all from the nurse hierarchy, of the hospital; some L.P.N.'s could give medication, others could not, depending entirely upon the whim of the Office of Director of Nursing of Baptist Hospital; some private duty nurses, the ones really too old to do their jobs properly, were given assistance by floor nurses, while others were refused assistance even when the need was great; a general shortage of nurses was apparent; and no student nurses were ever seen on the floor. Therefore, plaintiff became very active in various nurses associations during off duty hours, and seriously set out to do her part to alleviate some of the aforementioned problems."

Plaintiff was probably unpopular with the members of her own profession and she charges in conclusional allegations that her right of free speech was impaired and that her opportunities for employment were reduced. Her changes in employment were the consequence of her voluntary resignations.

A first complaint had two counts. Count I contained eighteen paragraphs, paragraph three of which contained this accusation against the Methodist Hospital:

"Prior to November 1964, plaintiff had no problem with any of the de-

fendants. Beginning about November 1964 up until the end of February 1966, plaintiff worked for the defendant Methodist Hospital in Memphis as a registered nurse. During said period of time, plaintiff discovered that the nursing standards in the defendant Methodist Hospital had declined to such an extent that many patients were suffering thereby, all as a result of the unprofessional nursing practices of the nursing staff at said hospital. Thereupon, plaintiff did her best to communicate these nursing problems to the agents, servants and employees of the defendant hospital, but was harshly discouraged from doing so by the said Methodist Hospital. For such efforts, the defendant hospital began to treat plaintiff badly, abused and insulted her, until finally plaintiff was forced to resign. Furthermore, plaintiff *understood* that she was then and there 'black balled,' and that she could no longer get a job as a registered nurse, and all because she exercised her right to freely speak, as guaranteed by the Constitution of the United States."

The design of plaintiff's plan to present a cause of action was first to name as a defendant Mary G. Shepherd, head nurse at the John Gaston Hospital which was owned and operated by the City of Memphis, Tennessee. She charged that whatever was done by defendant Shepherd was done as an agent and servant of the municipally owned hospital and was accordingly done under color of law —the law of Tennessee. She did not name the city-owned hospital, aware that it could not be sued as a "person" within the meaning of § 1983. She then charged that the Methodist Hospital, a corporation, the Baptist Memorial Hospital, a corporation, and the Tennessee Nurses Association, a corporation, all conspired with defendant Shepherd to inflict on plaintiff wrongs condemned by § 1985(3). No individuals acting on behalf of the named defendant corporations were identified.

After motions to dismiss plaintiff's complaint had been made and before a ruling thereon and with leave of court, plaintiff filed her amended complaint— the pleading now before us. It now contains 58 paragraphs in its Count I, and in Count II it avers that the acts set out in Count I made up an unlawful conspiracy "for the purpose of depriving plaintiff of her rights to free speech and to enjoy the privileges of practicing her chosen, and hard-earned profession." She asserts that Count II sets out "a common law cause of action against the defendants under the pendent jurisdiction theory." A count III was added wherein plaintiff charges that the actions and conspiratorial conduct of defendants were violations of the Sherman and Clayton Acts, 15 U.S.C. §§ 1 and 2, and 15 U.S.C. § 15.

As damages for the wrongs charged in Counts I and II, plaintiff asked for Three Million Dollars; also that damages awarded under Count III be trebled.

Motions to dismiss the amended complaint were made by all defendants and the District Judge granted them, setting out a Memorandum Decision and Order as follows:

"In the original complaint filed in this action, plaintiff seemed to make the claim that defendants singly and as members of a conspiracy had deprived her of her First Amendment right to freedom of speech. It further appeared that the freedom to which she made reference was the freedom to make suggestions and criticism to her superiors with respect to the operation of the hospitals in which she worked. She sued under 42 U.S.C. §§ 1983 and 1985(3).

"Defendants filed motions to dismiss, contending, *inter alia*, that plaintiff had no such freedom and that no 'color' of law had been alleged. We deferred ruling at argument and allowed plaintiff to amend.

"Plaintiff has since filed an amended complaint, in which she adds an anti-

trust claim under the Sherman and Clayton Acts.

"It is the opinion of this Court that plaintiff still has not alleged the deprivation of a right guaranteed by the Federal Constitution or a Federal Statute and further she has not alleged that the acts done were done under 'color' of a law within the meaning of the civil rights statutes.

"It is further the opinion of the Court that plaintiff has not alleged a violation of the Sherman or Clayton Acts.

"It is therefore ORDERED that the motions to dismiss be granted and the action is dismissed."

We agree with the District Judge. We do so for these several reasons. First, the complaint is made up of conclusional allegations. Second, the complaint did not set out causes of action under 42 U.S.C. §§ 1983 or 1985(3). Third, the complaint does not charge violation of the Sherman or the Clayton Acts.

1. Conclusional allegations.

We need only partially review the melange of miscellaneous allegations of the complaint to illustrate their vague and conclusional character. The nature of the constitutional deprivations suffered by plaintiff is alleged to be:

"8. The defendants, acting for themselves or by and through their duly authorized agents, under color of law as aforesaid, at all times material to this complaint, conspired to and did deprive plaintiff of certain rights, privileges and immunities secured to her by the Constitution and laws of the United States, namely, her rights, privileges, and immunities relating to freedom of speech, freedom of association, deprivation of a right to work without due process of law, and equal protection under the law."

There follows what are alleged as the "overt acts" of discrimination and conspiracy:

"17. Between September 1964 through February 1966, plaintiff became an active leader in her profession, but confined activities to her off duty hours. The whole nursing problem was publicly declared by these defendants and others as being one of a shortage of nurses. Plaintiff believed these defendants to have been sincere, and worked very hard to solve this problem and alleviate the shortage of nurses. She found out very soon that the defendants were privately very much opposed to the solution of the nurse shortage problem, and for that reason they tried to stop plaintiff in her efforts to alleviate said problem during her off duty hours.

"18. The Mayor of Memphis, in September 1964, expressed a desire to the West Tennessee League of Nursing, to proclaim a special day or week to honor and recognize nurses. Plaintiff was appointed to the public relations committee to work toward such an objective, which was successfully held during the week of January 11–15, 1968. Plaintiff worked very hard to help make the program a success, and the program was successful. Yet the defendants caused the leader, with whom plaintiff worked very closely, to have to leave Memphis because she would not heed their warnings not to bring the problem to the attention of the public. Plaintiff, too, was warned that she, too, would be black-balled by defendants if she did not quit her efforts to alleviate the nurse shortage.

"19. Thereafter, in about April 1965, the Board of Directors of the West Tennessee League of Nursing organized a local Council on Nursing, appertaining to the City of Memphis, and your plaintiff was made a member thereof. Plaintiff was made Chairman of a committee to determine the number and availability of all those local people who were qualified nurses, but not working as such. Plaintiff was admonished not to work with the committee, but she worked very hard, by advertisements in local newspapers and by personal appearances on local television, to do that which the committee was formed to do. Plaintiff found that there were many qualified nurses in Memphis and Shelby County who were not working as nurses, so reported to

the Council on Nursing, yet the Council, which was completely controlled by the defendants, deliberately failed to try to get such nurses back in nursing. Furthermore, because of the efforts of the defendants, plaintiff was not reappointed to the Council on Nursing for the year beginning 1966. And all during this period, plaintiff was being disciplined by the servants, agents and employees of the Methodist Hospital, as the beginning of the conspiratorial acts against her. The sole and only reason for such 'disciplining,' as will be more particularly set out, was because plaintiff had exercised her constitutional right to speak out in favor of nursing, when in truth and in fact the defendants wanted a shortage of nurses so that the defendant hospitals could procure funds from the United States Government to build additions to their plants; they could employ non-qualified persons to work as nurses, at greatly reduced costs; and for other reasons."

\* \* \* \* \* \*

"26. After several false representations by the supervisor of the section to which plaintiff asked for a transfer to, she was finally transferred by the office of the director of nursing. Plaintiff's new supervisor then called her in and treated her as a child, and gave her a childish list of things plaintiff would be required to do. No other nurse under that or any other supervisor was given such a written list of duties, or treated so childishly. Plaintiff accepted these unnecessary and immature admonitions, and did her work without a murmur."

\* \* \* \* \* \*

"32. The act of the defendant, Methodist Hospital, which did cause plaintiff to resign was a matter of scheduling. The assistant chief of nursing, whom plaintiff had seen only once or twice, and with whom plaintiff had never had any problems, arbitrarily decided that plaintiff could no longer have Sunday nights off. Plaintiff even found another nurse who wanted to work Sunday nights; but to no avail. The defendant hospital finally found the right pressure point to push, and they did cause plaintiff to resign. Because of plaintiff's family and other commitments, she could not work on Sunday nights, and so notified the authorities of Methodist. The decision not to change plaintiff's day off was deliberately arbitrary, because Methodist has on many occasions, before and since the first two months of 1966, arranged special days off to fit the convenience or necessity of other nurses. This action on the part of Methodist toward plaintiff was another part of the deliberate design on the part of the defendants to black ball plaintiff from nursing.

"33. Plaintiff expected no difficulty finding another job in nursing after she left Methodist in March 1966, because there was a shortage of nurses. Yet her applications for employment at Bowld Clinical Research Hospital, the Wm. F. Bowld Hospital, John Gaston Hospital and defendant Baptist Hospital, were all rejected. Their rejections, plaintiff now charges were because of the conspiracy of these defendants to black ball her.

"34. Plaintiff here and now alleges that she did not know the Baptist director of nurses at that time, had never had any business or social intercourse with her, and no reason on earth existed for said director of nurses to be prejudiced against her in any way. Plaintiff now knows that this was part of the conspiracy of the defendants to black ball her."

\* \* \* \* \* \*

"37. In August 1968, plaintiff was urged by a friend to apply for a job as a nurse at the said John Gaston Hospital, for the fourth time since she left Methodist Hospital in March 1966. At that time, union forces were trying very hard to unite the employees there, so that they could call a strike similar to the garbage strike. Plaintiff did apply and was accepted, though the director of nurses obviously was not pleased to hire plaintiff."

\* \* \* \* \* \*

"45. During the Nurse Week campaign, the conspiracy of the defendants was still

determined to black ball your plaintiff in every possible way. For example, a member of the administration of defendant Baptist Hospital called one of the John Gaston assistant administrators and deliberately and falsely lied to him that plaintiff was trying to recruit one of the Baptist Hospital L.P.N. employees."

\* \* \* \* \* \*

"50. Plaintiff then moved to Jonesboro to go to work at St. Bernard Hospital. When plaintiff tried to go to work the administrator and the hospital board refused to hire her because the defendant Shepherd had advised the St. Bernard people not to hire plaintiff, and then and there deliberately lied to said hospital people by making untrue statements as to plaintiff's character and capabilities. Plaintiff alleges that this was yet another act in the conspiracy of the defendants to black ball plaintiff, and that plaintiff was not hired solely because of the malicious and false representations made by defendant Shepherd."

\* \* \* \* \* \*

"55. Since October 1969, plaintiff has applied for employment with the City of Memphis Hospitals, or one or more of them. That application was refused after the employment officials received an adverse report from the defendant, Mary G. Shepherd, acting under color of her office, and with deliberate attempt to keep the conspiracy going against plaintiff."

■ We are unable to discern allegations of fact in the foregoing which would justify the broad conclusions asserted. A pleading will not be sufficient to state a cause of action under the Civil Rights Act if its allegations are but conclusions. In Blackburn, et al. v. Fisk University, 6 Cir., 443 F.2d 121 (decided May 28, 1971), we sustained dismissal of a Civil Rights case for the insufficiency of the allegations of the complaint. We said:

"Normally we are bound to accept the allegations of the complaint as true in deciding whether a motion to dismiss

was properly granted, L'Orange v. Medical Protective Co., 394 F.2d 57, 59 (6th Cir.). However, we are not bound by allegations that are clearly unsupported and unsupportable, Sexton v. Barry, 233 F.2d 220 (6th Cir.), cert. denied, 352 U.S. 870, 77 S.Ct. 94, 1 L.Ed.2d 76; Pauling v. McElroy, 107 U.S.App.D.C. 372, 278 F.2d 252, cert. denied, 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60; Homan Mfg. Co. v. Russo, 233 F.2d 547 (7th Cir.)."

See also Hoffman v. Halden, 268 F.2d 280, 294 (9th Cir. 1959); and McGuire v. Todd, 198 F.2d 60, 63 (5th Cir. 1952), cert. denied, 344 U.S. 835, 73 S.Ct. 44, 97 L.Ed. 649; Friedman v. Younger, 46 F.R.D. 444, 447 (C.D.Calif.1969); Shakespeare v. Wilson, 40 F.R.D. 500, 503 (S. D.Calif.1966).

2. Cause of action under 42 U.S.C. §§ 1983 and 1985(3).

The beginning premise of plaintiff's claim to entitlement to maintain this action is that defendant Mary G. Shepherd in whatever she did as a supervisor or employee of John Gaston Hospital was done "under color" of some law or custom of the State of Tennessee and that such conduct was a "deprivation" of some "right or immunity" secured to plaintiff by the "Constitution and laws" of the United States. See 42 U.S.C. § 1983. As a municipal hospital employee, Mrs. Shepherd arguably was vested with authority by the city to discharge the duties incident to her position. Under this theory, any action taken by her in her official capacity and within her apparent authority would be "under color of law." On the other hand, nothing Mrs. Shepherd allegedly did was done under the guise or pretense of any state law. Except for the fact that she was a city employee nothing about Shepherd's activity, or the effect thereof, was in any way dependent upon, or enhanced by, any state power or authority vested in her. Her alleged activities could have been done by supervisory personnel of any hospital, public or private, with the same effect.

Appellant has cited us no cases, and we have found none, where the sole alleged "state actor" was such adminis-trative figure as defendant Shepherd. The question is not free of doubt. See Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 1506 (1945); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, 1383 (1941); McShane v. Moldovan, 172 F.2d 1016, 1020–22 (6th Cir. 1949); Campbell v. Glenwood Hills Hosp., Inc., 224 F.Supp. 27, 30 (D.Minn.1963). The writer of this opinion, however, is not persuaded that whatever an employee of a city owned hospital does is done "under color of law." We will not hold that *anything* done in the performance of the duties of an employee, supervisory or otherwise, of a hospital becomes action under color of state law merely because the employer is a hospital owned and op-erated by a municipal corporation—here the City of Memphis. The discharge of Mrs. Shepherd's duties as described in the plaintiff's complaint did not need, nor did it arise out of, "any statute, ordi-nance, regulation, custom or usage" of the State of Tennessee or the City of Memphis.

The defendants, Baptist Memo-rial Hospital and Methodist Hospital, are joined first upon the contention that both of them have been recipients of "large sums of federal and state money for new hospital construction under the Nurses Training Act, the Hill-Burton Act, and other Public Health Service laws, 42 U. S.C. 291–299j." From this premise, plaintiff argues that their actions as well as the actions of their unnamed agents were "under color of law." In our recent decision in Blackburn v. Fisk Univer-sity, *supra*, plaintiffs, in order to sustain a case against Fisk University under 42 U.S.C. §§ 1983, 1985(3), alleged that "the University receives a substantial portion of its revenue in the form of government-al grants from the State of Tennessee and the United States." In holding that those allegations were not sufficient to convert the University into a state facil-ity, we said:

"State involvement sufficient to trans-form a 'private' university into a 'State' university requires more than merely chartering the university, Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629; providing financial aid in the form of public funds, Grossner v. Trustees of Columbia University, 287 F.Supp. 535 (S.D.N.Y.); or granting of tax exemptions, Browns v. Mitchell, 409 F.2d 593 (10th Cir.)." 443 F.2d at 123.

We consider such holding relevant to and dispositive of the attempt to make Methodist Hospital and Baptist Memorial Hospital "public" or "state" institutions.

Without identifying any person acting for the private hospitals or the Tennessee Nurses Association, plaintiff charges all three with conspiracy with defendant Shepherd under 42 U.S.C. § 1985(3). The conduct described had no racial involve-ment nor class-based discrimination. In holding that § 1985(3) does reach private conspiracies, the United States Supreme Court in Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), speaking through Mr. Justice Stewart, said:

"The constitutional shoals that would lie in the path of interpreting § 1985 (3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—*by requiring as an element of the cause of action, the kind of invidiously discriminatory mo-tivation stressed by the sponsors of the limiting amendment.* See the remarks of Representatives Willard and Shella-barger, quoted at p. 12, *supra.* The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that *there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.* The conspiracy, in other words, must aim at a deprivation of the equal en-joyment of rights secured by the law

to all." 403 U.S. 102, 91 S.Ct. 1798 (Emphasis supplied.)

The same reasoning was expressed in the Second Circuit's decision in Kletschka v. Driver, 411 F.2d 436 (2d Cir. 1969):

"But whatever other rights plaintiff may have been deprived of equal protection is not one of them. The actions taken by defendants were directed only against plaintiff as an individual and not because he was a veteran, or a member of some class or race. A violation of equal protection would be shown if the actions against plaintiff were part of a general pattern of discrimination, or were based on impermissible considerations of race or class, but plaintiff has not raised a genuine issue of fact concerning such discrimination. See Birnbaum v. Trussell, 371 F.2d 672, 676 (2d Cir. 1966); Birnbaum v. Trussell, 347 F.2d 86, 90 (2d Cir. 1965)." 411 F.2d at 447.

■ Assuming for the sake of argument that Mrs. Shepherd's activity was taken under "color of state law," appellant has not alleged the deprivation of any federal civil right. She does not allege she was discriminatorily *discharged* from any municipal hospital, but that she was *not hired* by other *private* hospitals because of the conspiracy between Mrs. Shepherd and the private hospitals to black ball her from employment because of her exercise of first amendment rights. In Ferrer v. Fronton Exhibition Co., 188 F.2d 954 (5th Cir. 1951), the Court said:

"The right of employment, and its redress when invaded, is exclusively within the domain of the state. *It is not a federal civil right.* Love v. Chandler, 8 Cir., 124 F.2d 785." (Emphasis supplied.)

See also Orr v. Trinter, 444 F.2d 128 (6th Cir., decided June 16, 1971). If appellant had been denied employment at John Gaston Hospital for the reasons alleged, she may have stated a cause of action. See Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811. However, the denial of employment by a private hospital even if such a denial inhibits free speech does not state a cause of action under § 1983, or constitute a denial of equal protection under § 1985(3).

■ In any event, appellant's claim against defendant Shepherd and allegations of conspiracy are conclusional and fail to state a cause of action on that basis.

3. The Sherman and Clayton Acts.

For her Count III charge of Sherman and Clayton Act violations plaintiff includes by reference the paragraphs contained in her Counts I and II. She adds the following, with other allegations:

"3. The defendants herein, and each of them, have conspired, and continue to effect the results of such conspiracy, to restrain trade or commerce. The Nurses Registry, a part of the defendant, Tennessee Nurses Association, Inc., operates by a committee composed of nurses who are from time to time employees and agents under the control of the other three defendants herein. (By virtue of this arrangement, the defendants control all, or almost all the employment of professional nurses for private duty in the City of Memphis and Shelby County in Tennessee, and also surrounding areas in West Memphis, Arkansas and in northern Mississippi). No nurse is allowed to do private duty nursing in any hospital in said areas, unless such nurse has first been sent to work there by the Nurses Registry, and no nurse, regardless of her qualifications, is allowed to be placed for duty by the Nurses Registry, unless such nurse has been approved by a committee which may arbitrarily disapprove a nurse for such employment, for no reason, or for any reason, regardless of her qualifications."

Because it is unlikely that anyone has, prior to this suit sought to employ plaintiff's claims to support violations of the Sherman and Clayton Acts, we find no relevant precedential decisions. We consider that her allegations in this regard suffer from the same vice as her others

—they are conclusional. For that reason and our general consideration of the subject, her Count III allegations just do not add up to a cause of action under the mentioned statutes. The relevant portion of the Sherman Act, 15 U.S.C. § 1, reads:

"Every contract, combination * * * or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *."

The complaint does not quote what language in the Clayton Act has anything to do with this lawsuit. It should be observed here that if we may assume that defendant Tennessee Nurses Association, Inc., is a labor organization as described in § 6 of the Clayton Act, 15 U.S.C. § 17, its actions would be exempt from the antitrust laws. This would be so unless its actions amounted to an illegal combination with the employers of the members of the association. See Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945). We do not consider that a cause of action under the Sherman or Clayton Act is discernable in the language of plaintiff's amended complaint.

Judgment affirmed.