893 F.2d 1334
 1990-1 Trade Cases 68,902
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Laurence R. DRY, M.D., Plaintiff-Appellant,
v.
METHODIST MEDICAL CENTER OF OAK RIDGE, INC., formerly known
as Oak Ridge Hospital of the Methodist Church,
Defendant-Appellee,
Marshall Whisnant, et al., Defendants.
 No. 89-5470.
 United States Court of Appeals, Sixth Circuit.
 Jan. 19, 1990.
 
 E.D.Tenn.
 AFFIRMED.
 On Appeal from the United States District Court for the Eastern District of Tennessee, 86-00454, Murrian(m).
 Before BOYLE F. MARTIN, Jr., NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Laurence R. Dry, M.D. appeals the district court's dismissal of his antitrust action for lack of standing and its denial of his motions to vacate or amend judgment and for leave to file a third amended complaint. We affirm.
 
 I.
 
 2
 Pursuant to Fed.R.Civ.P. 12(b)(6), we accept as true the facts stated in Dr. Dry's second amended complaint. Dr. Dry is a board-certified physician who maintains a "general, vascular and thoracic surgery practice" in Oak Ridge, Tennessee. J.App. at 11. Methodist Medical Center of Oak Ridge, Inc. ("Medical Center" or "Methodist Medical Center") is a not-for-profit corporation that owns and operates a "general acute care hospital and related facilities" in Oak Ridge. Id. at 12.[1] Count 1 of Dr. Dry's complaint alleges a violation of section 2 of the Sherman Act, 15 U.S.C. Sec. 2 (1973), claiming that the "Medical Center has been, and now is, engaged in attempting to monopolize and in monopolizing interstate trade and commerce in the general acute care hospital services market within the Anderson County ... [and the] Roane, Morgan, Scott and Campbell Counties, Tennessee geographic market area." Id. at 13-14. The complaint alleges numerous anticompetitive, exclusionary, and predatory acts by the Medical Center as the means for effectuating the Medical Center's monopoly. The complaint avers that the effect of Methodist Medical Center's acts and practices is a substantial decrease in the competition in the acute care hospital services market of the relevant geographic areas. It further charges that as a result of the Medical Center's practices, Dr. Dry has suffered a decrease in the number of patients treated, profits and the good will value of his practice.
 
 
 3
 Count 2 of Dr. Dry's complaint alleges a violation of section 1 of the Sherman Act. Incorporating the allegations of Count 1, Count 2 alleges that the Medical Center combined and conspired with other physicians to decrease or eliminate referrals of patients from family practitioners to Dr. Dry. The effect of the Medical Center's combination and conspiracy is allegedly to "unreasonably restrain competition among general, vascular and thoracic surgeons" within the relevant geographic markets. By reason of this combination and conspiracy, the complaint avers, the Medical Center caused Dr. Dry to lose profits and caused the value of his practice to diminish. Id. at 21-23. Count 3 of the complaint states a claim of tortuous interference with Dr. Dry's contract and business relationships. Id. at 23.
 
 
 4
 Dr. Dry filed his antitrust action in the United States District Court for the Eastern District of Tennessee seeking monetary damages and injunctive relief. Although Dr. Dry named the Medical Center as defendant in his original complaint of June 17, 1986, an amended complaint was filed on September 8, 1986, adding additional defendants and causes of action. Pursuant to Fed.R.Civ.P. 73(b), the parties consented to have this action referred to United States Magistrate Robert P. Murrian. On July 11, 1988, the district court granted Dr. Dry's motion for leave to file a second amended complaint, which Dr. Dry filed on July 27, 1988. The second amended complaint sought recovery from only the Medical Center and limited the claims for relief to violations of 15 U.S.C. Secs. 1 and 2 and pendent state tort claims. On September 8, 1988, Methodist Medical Center moved to dismiss Dr. Dry's action pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that Dr. Dry lacked standing to maintain an antitrust action against it.
 
 
 5
 Employing the factors set forth by the Sixth Circuit in Southaven Land Co., Inc. v. Malone & Hyde, Inc., 715 F.2d 1079, 1085 (6th Cir.1983), the district court found that Dr. Dry lacked standing to bring a private antitrust action for treble damages under section 4 of the Clayton Act, 15 U.S.C. Sec. 15(a) (1973). In addition, the district court found that Count 1 of Dr. Dry's complaint, alleging a conspiracy and combination to restrain trade, failed to state a claim upon which relief could be granted because it did not allege anticompetitive effects. Id. at 79-81. After the district court dismissed Dr. Dry's complaint with prejudice, Dr. Dry moved to vacate or amend judgment and for leave to file a third amended complaint. The district court declined to vacate or modify its judgment and refused to grant leave to file a third amended complaint because it determined that the amendment would be futile. Id. at 139.
 
 II.
 
 6
 Although Dr. Dry originally sought antitrust standing under both sections 4 and 16 of the Clayton Act, for money damages and injunctive relief, respectively, the district court addressed only Dr. Dry's section 4 claim and Dr. Dry limits his appellate arguments to the issue of his standing under section 4. Section 4 of the Clayton Act grants a treble-damages remedy to "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. Sec. 15(a). Dr. Dry argues that the magistrate erred in holding that he lacked standing to seek monetary damages for Methodist Medical Center's alleged antitrust violations because it applied a "heightened standard of pleading" in its Fed.R.Civ.P. 12(b)(6) analysis. He contends that if Rule 12(b)(6) were properly applied, his complaint would have established his standing to sue.
 
 
 7
 Dr. Dry's primary contention is that "because the issue arose in the context of a Rule 12(b)(6) motion, the district court was required to accept as true the 'bald allegation' that Dr. Dry was an 'economic participant' in the relevant market." Brief of Appellant at 16. Our review of a district court's dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) is de novo. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Accepting the facts as stated in the complaint and viewing them in a light most favorable to the pleader, we do not dismiss a complaint under the rule unless it appears beyond doubt that the plaintiff could not prove a combination of facts in support of his claim that would entitle him to relief. See id. The following factors are relevant to our determination of whether Dr. Dry has standing to sue under section 4:
 
 
 8
 1) the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market;
 
 
 9
 2) the causal connection between the antitrust violation and the harm to the plaintiff and whether that harm was intended to be caused;
 
 
 10
 3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative;
 
 
 11
 4) the potential for duplicative recovery or complex apportionment of damages; and
 
 
 12
 5) the existence of more direct victims of the alleged antitrust violation.
 
 
 13
 Southaven Land Co., 715 F.2d at 1085 (citing Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 537-546 (1983)). No one factor will be conclusive. Province v. Cleveland Publishing Co., 787 F.2d 1047, 1051 (6th Cir.1986).
 
 
 14
 The magistrate found that Dr. Dry alleged no facts in his complaint to support his assertion that he is a consumer or competitor (i.e., an economic participant) in the acute care hospital services market. J.App. at 70. The magistrate based his conclusion on two grounds. First, Tennessee Code Annotated Sec. 63-6-201 (1986) does not license hospitals to practice medicine or Medical Center could not be a competitor of Dr. Dry. Second, although Dr. Dry's second amended complaint alleged that he maintained "a general, vascular and thoracic surgery practice," the market allegedly affected by Methodist Medical Center's antitrust violations was one in which Dr. Dry did not purport to compete: the "acute care hospital services market." Id. at 69-70.
 
 
 15
 Dr. Dry deems the latter findings by the magistrate inappropriate in the context of a Rule 12(b)(6) motion to dismiss because the magistrate was required to accept his allegation that he was an economic participant in the acute care hospital services market at face value. We believe that Dr. Dry misapprehends the standard governing a Rule 12(b)(6) motion to dismiss. In accepting the facts alleged as true, a court need not accept "conclusory allegations on the legal effect of the events" or conclusory assertions which are unsupported and unsupportable. 5 C. Wright & A. Miller, Federal Practice and Procedure, Sec. 1357; Place v. Sheppard, 446 F.2d 1239, 1244 (6th Cir.1971). In the present case, Dr. Dry has alleged in his second amended complaint that he competes in one market--general, vascular and thoracic surgery--while Methodist Medical Center competes in another--the acute hospital care services market. He does not state facts showing an overlap of the two markets but merely asserts the conclusion that "[t]he effect of acts and practices of the medical center is likely to be a substantial lessening of competition ... in the acute care hospital services market ... such markets being those in which Dr. Dry does business." J.App. at 20-21. The omission of an essential fact in a complaint strongly implies its nonexistence. McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (6th Cir.1988) (per curiam). Here, Dr. Dry's failure include in his complaint factual allegations which would establish that he competed in the same relevant product market as Methodist Medical Center undermines his claim of standing to sue under section 4.
 
 
 16
 Although Dr. Dry is not a competitor within the general acute care hospital market, his argument for standing is enhanced if he can demonstrate that his injuries are "inextricably intertwined" with those inflicted on the relevant market. See Southaven, 715 F.2d at 1086. Dr. Dry must show that Methodist Medical Center used him as "a fulcrum, conduit or market force to injure competitors or participants in the relevant product market." Id. Dr. Dry alleges in his proposed third amended complaint that the Medical Center took various actions to punish critics of its illegal activities and that he suffered injury as a result of his being used as an example to frighten other critics.[2] This is clearly not the active manipulation contemplated by the "inextricably intertwined" concept. See McCready v. Blue Shield of Virginia, 457 U.S. 465 (1982) (plaintiff presented with a "Hobson's choice" of selecting the services of the targets of an antitrust conspiracy and forfeiting insurance reimbursements, or selecting the services of conspirators and thereby limiting her choice of psychotherapy services). We find that the district court did not apply a heightened standard of pleading in rejecting Dr. Dry's claim that he is an economic participant in the acute care services hospital market.
 
 
 17
 Furthermore, Dr. Dry's argument that the magistrate considered evidence outside of the pleadings and should have therefore treated Methodist Medical Center's motion to dismiss as a summary judgment motion is without foundation. Dr. Dry argues that the magistrate cited a law review article, Tennessee Code Annotated Sec. 63-6-201, and Smith v. Northern Hospital, Inc., 703 F.2d 942 (6th Cir.1983), "to supply facts." A review of the context in which the magistrate cited these materials does not support Dr. Dry's contention. J.App. at 69-71. In each instance, the magistrate relied on these authorities to deduce the unsupportability of Dr. Dry's allegations. Indeed, in Smith, 703 F.2d at 955 n. 27, this court found that physicians suing a hospital for violations of section 2 of the Sherman Act were not competitors of the defendant when they enjoyed staff privileges at the very hospital against which suit was brought. Dr. Dry has enjoyed staff privileges at Methodist Medical Center since 1973. On the facts of this case, Dr. Dry is not a competitor of the Medical Center.
 
 
 18
 We briefly address Dr. Dry's contentions regarding the remaining antitrust standing factors delineated in Southaven. Dr. Dry argues that because his second amended complaint alleges that the Methodist Medical Center intended to harm him and that there is a causal connection between the Medical Center's antitrust violation and his injury, these allegations are conclusive of our inquiry into the causal connection/intent prong of the balancing test. However, even the most generous reading of Dr. Dry's amended complaint does not permit an inference that he is an intended victim with respect to Count 1. The antitrust infraction complained of in Count 1 is monopolization or attempted monopolization of the acute care hospital services market. J.App. at 13. As previously established, that is not a market in which Dr. Dry competes.
 
 
 19
 The antitrust wrong complained of in Count 2 is unreasonable restraints of competition among general, vascular, and thoracic surgeons within the geographic area indicated in the second amended complaint. Id. at 21. Dr. Dry alleges that he is an intended victim under Count 2 because the Methodist Medical Center combined and conspired to reduce or eliminate patient referrals from family practitioners to him. The intended victim of this alleged activity is unclear. However, to the extent that any victims exist, the means used to reduce the referrals suggests that family practitioners are the targets because it is through actions affecting these physicians that Dr. Dry's source of patient referrals is diminished. See id. at 14-15.[3] The injuries to Dr. Dry appear incidental to the injuries to family practitioners. Third party injuries which derive from injuries to intended victims of an antitrust scheme are insufficient to confer standing under section 4 of the Clayton Act. See Fallis v. Pendleton Woolen Mills, Inc., 866 F.2d 209, 210-11 (6th Cir.1989) (terminated employee who brought antitrust action against his employer alleging that employer's vertical price fixing scheme reduced his sales commissions not granted standing where employer's scheme was intended to harm retailers and where employee's reduced sales commissions was merely an incidental result of the scheme); Province, 787 F.2d at 1047 (no antitrust standing to newspaper employees who alleged that they lost their jobs because of a conspiracy between their employee and a surviving newspaper where employees could show no intent to harm them and nexus between conspiracy and loss of employment was attenuated). Thus, the causal connection/intent prong of the balancing test strongly belies Dr. Dry's claim of standing.
 
 
 20
 With regard to the directness of his injury and the existence of more direct victims, Dr. Dry contends that although a variety of persons may be injured by the Medical Center's antitrust infractions, the multiplicity of victims does not make his injuries any less direct or his damages any more speculative. While we agree that there may be more than one direct victim of a defendant hospital's antitrust infractions, Dr. Dry is not one of these victims. We are not, for instance, presented with a case in which a defendant hospital's conduct adversely affects both competitor hospitals and individual physicians who seek standing. See, e.g., Potters Medical Center v. City Hospital Association, 800 F.2d 568 (6th Cir.1986) (holding that both a competitor hospital and excluded physicians may be directly injured by defendant hospital's restrictive staff privileges policy). Because it is clear that more direct victims than Dr. Dry exist, the potential for duplicative recovery would be greatly increased by granting him standing. "Where the court finds that plaintiffs have only suffered an indirect injury as a result of the alleged antitrust violations, the danger of duplicative recovery is highly relevant." Province, 787 F.2d at 1053. Accordingly, having balanced the factors prescribed by Southaven, we hold that the district court properly denied Dr. Dry standing to sue under section 4 based on the allegations contained in the second amended complaint.
 
 III.
 
 21
 We next consider the district court's denial of Dry's post-judgment motions to vacate judgment and for leave to file a third amended complaint. Denial of these post-judgment motions is reviewed pursuant to an abuse of discretion standard. Hamilton v. Bean, 745 F.2d 1034, 1036 (6th Cir.1984). "Denial of such a motion is not an abuse of discretion where '[t]he infirmities of the original complaint are not dissipated by the amended complaint.' " Id. (citations omitted).
 
 
 22
 To cure his failure to allege that he was an economic competitor of the Medical Center, Dr. Dry alleges in his proposed third amended complaint that "[f]rom 1979 to 1982, Dr. Dry owned and operated an emergency medical service facility which competed with the emergency room at the Medical Center." Dr. Dry's proposed allegation, however, appears to be nothing more than an "after-thought ... possibly prompted only by the concern that [he] would lose...." Sandcrest Outpatient Services, P.A. v. Cumberland v. County Hospital System, Inc., 853 F.2d 1139, 1148-49 (4th Cir.1988). Where it appears that a proposed amendment is dilatory and the plaintiff was or should have been aware of the information sought to be added as an amendment, a district court does not abuse its discretion by denying a plaintiffs' motion to amend his complaint. Id. The omitted factual allegation in the case before us is a significant fact which Dr. Dry was or should have been aware of when he filed his second amended complaint. The second amended complaint was filed on July 27, 1988. The Medical Center's motion to dismiss was filed in September of the same year. This motion and its supporting memorandum should have alerted Dr. Dry as to the materiality of the omitted allegation. See J.App. at 35. Yet, Dr. Dry waited until his suit was dismissed to file a motion for leave to amend. Under these circumstances, the motion was dilatory and properly denied.
 
 
 23
 Dr. Dry also contends in his third amended complaint that he is a consumer within the relevant market of general acute care hospital case services. Dr. Dry reasons that this market is divided into two components, one in which surgeons such as himself are providers, the other in which surgeons are consumers:
 
 
 24
 The surgical component of the cluster of services is comprised of two (2) parts, 'professional' and 'technical'. The 'professional' part is composed of the physicians who provide surgical and anesthesiology services directly to the patient. The 'technical' part is comprised of the equipment and support services, including the nursing and technical services provided by employees of the hospital in the surgery suite to the physician to assist him in providing services to the patient. A surgeon operating in a general acute care hospital is thus both a 'provider' and 'consumer' of general acute care hospital services....
 
 
 25
 The magistrate found that the actual consumer of operating room services is the patient. J.App. at 136. We agree. A staff physician of an acute care hospital is neither a competitor of the hospital nor a consumer of its services. Cf. White v. Rockingham Radiologists, LTD., 820 F.2d 98, 104 (4th Cir.1987) (staff neurologist not competitor or consumer in medical and surgical services market in which hospital competes).
 
 
 26
 Finally, Dr. Dry alleges in his proposed third amended complaint that from 1985 to the present, he has been actively involved in an attempt to establish an ambulatory service center which would compete with emergency room services and surgical services of the Medical Center. J.App. at 103-05. "The test for determining whether a potential competitor has a business interest protected by antitrust laws is whether he had both the intention and preparedness to compete." Bubis v. Blanton, 885 F.2d 317, 319 (6th Cir.1989) (emphasis original). Because Dr. Dry does not explain what his "attempt" to establish an ambulatory service center consisted of, a grant of standing on the basis of his bald assertion would be purely speculative. We do not believe that Dr. Dry's claim as a potential competitor rectifies his complaint so as to withstand a motion to dismiss.
 
 IV.
 
 27
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 As we understand the term from the parties' presentations at oral argument, "general acute care" refers to a facility capable of providing inpatient treatment or hospitalization
 
 
 [2]
 Throughout his appellate brief, Dr. Dry improperly relies on allegations contained in his proposed third amended complaint in support of his arguments that the magistrate erred in dismissing his second amended complaint
 
 
 [3]
 Paragraph 6(e) of Dr. Dry's second amended complaint alleges that one means of the medical center's monopolization is by "Erecting and/or maintaining artificial barriers to market entry ... by actual or potential providers of primary care medical services ... including so called 'family practitioners' ... thereby denying Dr. Dry a competitive source of patient referrals." J.App. at 14-15