595 F.Supp. 1077 (1984)
LAC COURTE OREILLES BAND OF LAKE SUPERIOR CHIPPEWA INDIANS; Red Cliff Band of Lake Superior Chippewa Indians; Sokaogon Chippewa Indian Community, Mole Lake Band of Wisconsin; St. Croix Chippewa Indians of Wisconsin; Bad River Band of the Lake Superior Chippewa Indians; Lac Du Flambeau Band of Lake Superior Chippewa Indians, Plaintiffs,
v.
STATE OF WISCONSIN, Wisconsin Natural Resources Board, Carroll D. Besadny, James Huntoon, and George Meyer, Defendants.
No. 74-C-313.
United States District Court, W.D. Wisconsin.
October 19, 1984.
*1078 Howard Bichler, Wisconsin Judicare, Wausau, Wis., for St. Croix.
James Jannetta, Getzin & Jannetta, Lac du Flambeau, Wis., for Lac du Flambeaus.
Kathryn L. Tierney, Tribal Atty., Hayward, Wis., for Lac Courte Oreilles.
Earl Charleton, Charleton Law Firm, Milwaukee, Wis., for Mole Lake Band.
Milton Rosenberg, Bell Law Offices, Madison, Wis., for Red Cliff Band.
Candy L. Jackson, Odanah, Wis., for Bad River Band.
Maureen McGlynn, Mary Bowman, Asst. Attys. Gen., Madison, Wis., for defendants.
Mark Hazelbaker, Legal Counsel, Wis. Counties Assn., Madison, Wis., for amicus curiae.

OPINION AND ORDER
JAMES E. DOYLE, District Judge.
Defendant State of Wisconsin invokes 11th amendment immunity as an affirmative defense to all claims by plaintiffs. The other defendants contend they share in the State's immunity. Plaintiffs seek declaratory and injunctive relief, and monetary damages for past infringement of their rights. Although defendants have raised a variety of affirmative defenses, I deal here only with whether 11th amendment immunity is available.

I.
A state can waive its 11th amendment immunity. However, because of the gravity of the constitutional immunity afforded states, courts "will find waiver only where stated `by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (cite omitted). Notwithstanding possible indications to the contrary in its pleadings or briefs, the State has not waived any of its 11th amendment immunity. The Assistant Attorney General noted at hearing that Wisconsin law does not authorize the Attorney General to waive the state's immunity in the course of litigation. Wis.Stat. 165.25. See Ford Motor Co. v. Dept. of Treasury of State of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). I understand plaintiffs not to contend that during the course of this litigation, the State has consented explicitly or implicitly to suit; rather, they argue the State's 11th amendment immunity has been abrogated by statute.

II.
It is settled that Congress can abrogate states' immunity through legislation that clearly provides a federal forum for claims against states. Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). States are considered to have consented to abrogation by Congress in the exercise of its delegated constitutional powers. Jennings v. Illinois Office of Education, 589 F.2d 935 (7th Cir. 1979); Oneida Indian Nation of N.Y. v. State of N.Y., 520 F.Supp. 1278 (N.D.N.Y. 1981). However, a party claiming statutory abrogation bears a heavy burden. In Quern, infra, the Court stressed that to abrogate states' 11th amendment immunity a federal statute must contain explicit language evincing Congress' intent to override the 11th amendment, or legislative history must show Congress focused directly on the question and intended to abrogate the 11th amendment. On occasion the Court has found abrogation: Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 94 L.Ed.2d 614 (1976) (Title VII); Parden v. Terminal *1079 Railroad Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) (Federal Employees Liability Act). More often, it has not: Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (42 U.S.C. § 1983); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Employees v. Missouri Public Health Dept., 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (Fair Labor Standards Act).
The issue is whether 28 U.S.C. § 1362 constitutes abrogation. It provides: "district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe" on federal law grounds.
This language does not explicitly abrogate immunity of states to actions commenced by Indian tribes in federal courts, and the state argues with some force that the legislative history of § 1362 shows no clear intent to abrogate. The brief legislative history of § 1362 shows a primary objective of the bill was to free Indian tribes from the then existing $10,000 amount-in-controversy requirement of 28 U.S.C. § 1331. The focus is on jurisdictional amount. For example, the House report states:
In providing for original jurisdiction of all civil actions of this type, the bill has the effect of removing the $10,000 jurisdictional requirement which presently applies as to such actions [under § 1331]. The district courts now have jurisdiction over cases presenting Federal questions brought by the tribes when the amount in dispute exceeds $10,000. Enactment of this bill would merely authorize the additional jurisdiction of the court over those cases where the tribes are not able to establish that the amount in controversy exceeds that amount.
H.R.Rep. No. 2040, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Ad. News 3145, 3146. Later, the report states:
This bill would therefore authorize the addition of only those cases, which the Justice Department stated would probably not be large in number, where the tribes have not been able to show that the amount in controversy exceeds $10,000, and the Government for some reason does not want to prosecute the case in behalf of the tribe.
Id. at 3147. The specific impetus for the bill seems to have been a case in which a tribal suit had been dismissed for failure to meet the jurisdictional amount requirement. Yoder v. Assinibone and Sioux Tribes, 339 F.2d 360 (9th Cir.1964).
In Moe v. Confederated Salish & Kootenai Tribes, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), however, the Court attributed to Congress a far broader purpose. Referring to statements in the legislative history of § 1362, the Court stated: "it would appear that Congress contemplated that a tribe's access to federal court ... would be at least in some respects as broad as that of the United States suing as the tribe's trustee." Id. at 473, 96 S.Ct. at 1641. Moe embodied actions by an Indian tribe and some of its members to enjoin enforcement of certain Montana tax laws. The question was whether the actions were barred by 28 U.S.C. § 1341, which provides that federal district courts may not enjoin enforcement of state tax laws where adequate state court remedies exist. The Court observed that the actions are of the kind which could have been brought by the United States as plaintiff, on behalf of the tribe, 25 U.S.C. § 175, and that the United States is not barred by § 1341, citing Department of Employment v. United States, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966). It concluded that because the United States is not barred by § 1341, the tribe is not barred. Thus, eligibility for injunctive relief against state taxes despite the statutory bar of § 1341 was held to be among the "some respects" in which access to the federal courts by Indian tribes is as "broad" as access by the United States.
The 11th amendment does not bar the United States from suing a state in federal court. The key issue here is whether eligibility for judicial relief against a state despite the constitutional bar of the 11th amendment is among the respects in which access to the federal courts by tribes *1080 is as broad as access by the United States. Presumably, a constitutional limit should not be overridden as easily as a statutory privilege. However, § 1341 is no ordinary statute; it is a codification of a substantial common law privilege given to states. The importance of the protection afforded states by § 1341 is shown by the fact that its bar, like that of the 11th amendment, may be raised at any time by a party or the court. Illinois Cent. R. Co. v. Howlett, 525 F.2d 178 (7th Cir.1975).
The cases since Moe are one-sided in their conclusion that § 1362 did abrogate the states' 11th amendment immunity. In Oneida Indian Nation of N.Y. v. State of N.Y., 520 F.Supp. 1278 (N.D.N.Y.1981), the district court concluded there was sufficiently clear indication that Congress intended § 1362 to override the 11th amendment. The court relied on the Moe rationale: since the 11th amendment would have been no bar to suit by the United States as the tribe's trustee, it does not bar a suit brought directly by the tribe under § 1362. The court also emphasized the quasi-sovereign status of Indian tribes, particularly as it relates to claims involving the protection of tribal lands. It said this status justifies the imposition of a lesser standard for finding Congressional abrogation of the 11th amendment than that articulated in Quern v. Jordan, supra. Id. at 1306-07. The Second Circuit affirmed the district court's holding on 11th amendment immunity. Oneida Indian Nation of N.Y. v. State of N.Y., 691 F.2d 1070 (2d Cir.1982). Other decisions have followed suit. Oneida Indian Nation of New York v. Oneida County, 719 F.2d 525 (2d Cir.1983); Cayuga Indian Nation of New York v. Cuomo, 565 F.Supp. 1297 (N.D.N.Y.1983); Charrier v. Bell, 547 F.Supp. 580 (M.D.La.1982); Confederated Tribes of Colville v. State of Wash., 446 F.Supp. 1339 (E.D.Wash.1978), rev'd in part on other grounds, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980).
I am persuaded that in enacting 28 U.S.C. § 1362 Congress abrogated the 11th amendment immunity of the states. Applying the rationale of Moe, I conclude that since notwithstanding the 11th amendment the United States could have sued defendants in this court on behalf of plaintiffs, plaintiffs may do so on their own behalf.
The State contends abrogation of immunity by § 1362, if recognized, should be limited in two ways.
First, it contends there is a significant difference between tribal suits involving land claims and those involving hunting and fishing rights, as here. The State urges that even if § 1362 abrogates its 11th amendment immunity, the statute does so only with respect to tribal land claims. The State notes that all the cases finding abrogation thus far have involved land claims; further, language in the legislative history of § 1362 focuses on land claims. I infer the State's argument to be that Congress meant to free tribes from the 11th amendment bar only with respect to claims very closely related to their status as Indians, and not to claims commonly pressed by non-Indians as well as Indians. But tribal land claims are by no means the only uniquely Indian legal claims. Treaty claims to enforce traditional hunting and fishing rights are paradigmatically associated with Indian tribes. Moreover, I find nothing in the legislative history of § 1362 to indicate that Congress contemplated any distinction among the subject matters of claims brought by tribes.
I also reject the State's second suggestion: that § 1362's abrogation extends only to prospective relief, and not to retroactive monetary relief.[1] The State appears to argue that the gravity of the immunity enjoyed by states under the 11th amendment requires that Congressional abrogation of it be narrowly viewed to minimize the intrusion into state sovereignty. The argument appears to be that injunctive and declaratory relief will sufficiently redress *1081 plaintiffs' grievances and, thus, the state's immunity from retroactive relief should be preserved. It is true that in cases in which 11th amendment immunity is operative  neither waived by the state nor abrogated by Congress  a fundamental distinction has been drawn between retroactive and prospective relief. See Edelman, supra. However, I perceive no basis  and none has been suggested  for holding that depending on the circumstances of a case a statute may abrogate the 11th amendment only partially. Moreover, if such a distinction is appropriate in some circumstances, I cannot say, presently at least, that plaintiffs' claims here for monetary damages are so insignificant as to preclude abrogation.
I hold that 28 U.S.C. § 1362 abrogates the 11th amendment, thereby rendering the State of Wisconsin vulnerable to suit for relief of all types sought by plaintiffs. This disposition of the State's 11th amendment claim may moot certain other of defendants' affirmative defenses. There is obviously no need to address whether any other defendants share in the State's immunity. I refrain from passing on any remaining affirmative defenses the defendants may wish to pursue.

ORDER
Defendants' 11th amendment immunity affirmative defense is stricken. Defendants are free to pursue any of their other affirmative defenses not disposed of by the implications of this ruling.
NOTES
[1] It is not entirely clear whether this limiting theory is advanced only in the context of waiver, discussed in part I of this opinion. I proceed on the assumption it is advanced as to abrogation as well.