LAC COURTE OREILLES BAND OF LAKE SUPERIOR CHIPPEWA INDIANS; Red Cliff Band of Lake Superior Chippewa Indians; Sokaogon Chippewa Indian Community, Mole Lake Band of Wisconsin; St. Croix Chippewa Indians of Wisconsin; Bad River Band of the Lake Superior Chippewa Indians; Lac Du Flambeau Band of Lake Superior Chippewa Indians, Plaintiffs,

v.

STATE OF WISCONSIN, Wisconsin Natural Resources Board, Carroll D. Besadny, James Huntoon, and George Meyer, Defendants.

No. 74–C–313–C.

United States District Court, W.D. Wisconsin.

June 23, 1987.

James E. Zorn, Hayward, Wis., James L. Beck, Wisconsin Judicare Inc., Wausau, Wis., for Lac Courte Oreilles Band of Lake Superior Chippewa Indians.

Milton Rosenberg, Madison, Wis., for Red Cliff Band of Lake Superior Chippewa Indians.

Earl Charleton, Milwaukee, Wis., for Sokaogon Chippewa Indian Community, Mole Lake Band of Wisconsin.

Howard Bichler, Webster, Wis., for St. Croix Chippewa Indians of Wisconsin.

Candy L. Jackson, Odanah, Wis., for Bad River Band of the Lake Superior Chippewa Indians.

Kathryn Tierney, James Janetta, Lac du Flambeau, Wis., for Lac du Flambeau Band of Lake Superior Chippewa Indians.

Mary V. Bowman, Charles Larson, James McDermott, Asst. Atty. Gen., Madison, Wis., for defendants State of Wis., Wisconsin Natural Resources Bd., Carroll D. Besadny, James Huntoon and George Meyer.

## OPINION AND ORDER

CRABB, Chief Judge.

Plaintiff Lac Courte Oreilles Band of Lake Superior Chippewa Indians has petitioned for attorneys' fees under 42 U.S.C. § 1988 for what may be considered the first phase of this lawsuit.[1] The first phase began when the original complaint was filed in 1974 and ended with the denial of certiorari by the United States Supreme Court on October 3, 1983, which left standing the decision of the court of appeals in plaintiff's favor. *Lac Courte Oreilles Band v. Voigt,* 700 F.2d 341 (7th Cir.), *cert. denied,* 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983).

With the court's permission, defendants responded to the petition for attorneys' fees with a motion under Rule 12(h)(3), Federal Rules of Civil Procedure, to dismiss the complaint insofar as it alleges a cause of action under 42 U.S.C. § 1983, for which attorneys' fees may be available under 42 U.S.C. § 1988. Defendants contend this court lacks jurisdiction over the subject matter of the § 1983 claim.

Defendants' motion is directed only to plaintiffs' claims under § 1983. Plaintiffs also have a claim under 28 U.S.C. § 1362, which is not addressed in this opinion.

Defendants challenge this court's subject matter jurisdiction to entertain the § 1983 claim on the grounds that: (1) plaintiffs'

---

1. Originally, the sole plaintiff was the Lac Courte Oreilles Band; in 1975, the amended complaint added as plaintiffs two individual members of the tribe. Following the first phase of the litigation, the individual plaintiffs were dropped and five other bands joined as plaintiffs.

treaty rights are not rights secured under the Constitution and laws of the United States within the meaning of § 1983; (2) plaintiffs are not citizens or other persons within the meaning of § 1983; and (3) the defendant State of Wisconsin enjoys Eleventh Amendment immunity from suit under § 1983.

Unlike other defenses that are waived if not raised at specified points in a lawsuit, *see* Rules 12(h)(1) and (2), the defense of absence of subject matter jurisdiction may be raised at any time by suggestion of the parties or the court. Rule 12(h)(3); *Casio, Inc. v. S.M. & R. Co., Inc.* 755 F.2d 528, 530 (7th Cir.1985); *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1055 (7th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984). Defendants' motion is timely.[2]

### Standard of Decision for Defendants' Motion

One other procedural matter must be addressed before I turn to the merits of the motion.

Defendants are challenging elements of plaintiffs' federal cause of action under § 1983. In a recent case, the Court of Appeals for the Seventh Circuit directed the lower courts to give different treatment to the two different kinds of jurisdictional challenges: those more common challenges to jurisdiction such as lack of diversity, and those challenges that actually attack an element of the federal cause of action. *Malak v. Associated Physicians, Inc.*, 784 F.2d 277 (7th Cir 1986). A challenge to an element of the federal cause of action requires a determination of the legal sufficiency of the complaint, not a determination of the factual predicates for subject matter jurisdiction.[3] My understanding of *Malak* is that a somewhat duplicative two-step inquiry must be undertaken when there is a jurisdictional challenge to an element of the federal claim. First, the district court must determine whether, under *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), the claim is wholly insubstantial or frivolous. 784 F.2d at 279. Only if the claim fails the *Bell* test may the court dismiss on jurisdictional grounds. Second, after having satisfied itself that the claim is not insubstantial or frivolous, "the district court should take jurisdiction and handle defendants' motion as a direct attack on the merits of plaintiff's case." *Id.* at 280 (citations omitted). At that point, the motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) must be treated as a challenge to the merits of the claim, as if had been brought under Rule 12(b)(6). *Id. See* 2A *Moore's Federal Practice* ¶ 12.07[2.–1] (1986).

Because it is not clear in *Malak* when the dismissal motions were filed, I assume that they were made before the filing of an answer. In this case defendants' motion was made long afer the filing of the answer and the amended answer, making it inappropriate to consider it under Rule 12(b)(6), which is directed to motions made before the filing of an answer. Instead, after determining whether the § 1983 claim is insubstantial or frivolous, I will proceed according to Rule 12(h)(2), and will treat defendants' motion as if it were denominated a motion for judgment on the pleadings under Rule 12(c). *Schy v. Susquehanna Corp.*, 419 F.2d 1112, 1115 (7th Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). *See also Roberts v. American Airlines, Inc.*, 526 F.2d 757, 761 (7th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

### I. Substantiality of Plaintiffs' Claims

#### A. Treaty-based rights under § 1983

Defendants argue that subject matter jurisdiction is not present to entertain

---

**2.** An awkwardness arises from defendants' reference only to Rule 12(h)(3) as a basis for its challenge to subject matter jurisdiction. The appropriate Rule is 12(b)(1), permitting dismissal in the absence of subject matter jurisdiction. It is true that the timeliness of this 12(b)(1) motion might have been questioned, but defendants have shown that it is not untimely in this case. Therefore, I proceed as though the pending motion is a timely Rule 12(b)(1) motion.

**3.** Although there has been a series of complaints, all have alleged claims under § 1983. I will use the singular "complaint" to refer to all of the complaints when there are no relevant differences among them. Where it is important to distinguish among them, I will do so.

plaintiffs' § 1983 claim in this court because treaty-based rights are not cognizable as rights "secured by ... laws," within the meaning of § 1983.

42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or imunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Neither this court nor the parties have found any precedent, before 1974 or since, holding that Indian treaties are not federal laws within the meaning of § 1983. Absence of clearly contrary precedent itself may shield a claim from a challenge to subject matter jurisdiction. *See Hagans v. Lavine,* 415 U.S. 528, 537–38, 94 S.Ct. 1372, 1379–80, 39 L.Ed.2d 577 (1974).

Prior to the commencement of this action, one court of appeals had explicitly refrained from deciding whether a treaty right is subject to vindication under § 1983. *Quinault Tribe of Indians v. Gallagher,* 368 F.2d 648, 653 (9th Cir.1966), *cert. denied,* 387 U.S. 907, 87 S.Ct. 1684, 18 L.Ed.2d 626 (1967). In 1975, the year the complaint in this case was first amended, another court faced with a § 1983 claim alleging a violation of treaty rights avoided deciding the issue, finding jurisdiction on other grounds. *Confederated Salish & Kootenai Tribes of the Flathead Reservation, Montana v. Moe,* 392 F.Supp. 1297, 1304–05 (D.Mont.1974), *aff'd,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). Because the few reported cases touching on the issue do not resolve the question, I conclude that plaintiffs' claim that a treaty is a law under § 1983 was not insubstantial or frivolous at the time the complaint and amended complaint were filed.

No case reported since 1974 has held a treaty is not a law within the meaning of § 1983, and two Supreme Court decisions strengthen plaintiffs' contention. The first is *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), in which the Court held that the scope of the language of § 1983 embraces claims based on purely statutory violations of federal law. The Court had no occasion to address the applicability of § 1983 to claims based on rights derived from sources other than the Constitution and statutes, such as from treaties. However, *Thiboutot* makes more plausible plaintiffs' § 1983 claim based on the infringement of treaty rights, given the prior narrow interpretation that vindication under § 1983 was limited to deprivations of rights under the Fourteenth Amendment or statutes implementing the Fourteenth Amendment. *See, e.g., Monroe v. Pape,* 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492 (1961); *Spears v. Robinson,* 431 F.2d 1089, 1091 (8th Cir.1970).

The second recent case of significance is *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). In *Adams* the Supreme Court held, citing *Thiboutot,* that a state prisoner stated a claim under § 1983 by alleging that state officials violated his rights under the Interstate Agreement on Detainers. Although the agreement was enacted as a state statute, the Court found the agreement constituted a federal law under § 1983 because of the prior congressional consent required for interstate agreements by the compact clause, U.S. Const. art. I, § 10, cl. 3.[4] *Id.* at 439–40, 101 S.Ct. at 707–08.

I interpret *Adams* to support the proposition that the "laws" securing rights for § 1983 purposes are not limited to the Constitution and federal statutes, making it a closer question whether § 1983 covers violations of treaty rights. Ratification of Indian treaties by a two-thirds majority of the Senate is more direct and focused congressional action than is approval prior to state enactment of the Interstate Agreement on Detainers. Given *Thiboutot* and

---

**4.** The compact clause reads, in pertinent part: "No State shall, without the Consent of Congress

... enter into any Agreement or Compact with another State...." U.S. Const. art. I, § 10, cl. 3.

*Adams,* I find that plaintiffs' claim that treaties secure rights under § 1983 has become more substantial since the commencement of this action.

### B. *Tribes as "other persons" under § 1983*

The current plaintiffs in this lawsuit are six bands of Lake Superior Chippewa Indians. Defendants contend that the plaintiff bands are neither citizens nor "other persons" within the meaning of § 1983, and that even if they were, they are not entitled to sue under § 1983 because the asserted treaty rights belong not to the plaintiff tribes, but to the individual members of the tribes. I hold that plaintiffs' allegation that they may seek redress under § 1983 for violations of treaty rights is neither insubstantial nor frivolous.

Defendants cite no authority holding that a tribe is not an "other person" under § 1983. Defendants' references demonstrate that a corporation may sue under § 1983 to vindicate a right possessed by the corporation as an entity. *Adams v. City of Park Ridge,* 293 F.2d 585, 587 (7th Cir.1961). Labor unions are also "other persons" capable of suing under § 1983. *Allee v. Medrano,* 416 U.S. 802, 819 n. 13, 94 S.Ct. 2191, 2202, n. 13, 40 L.Ed.2d 566 (1974). At least one district court has held that an Indian tribe may sue under § 1983; however, that court did not address the question whether the tribe is an "other person" within the meaning of the statute. *Moe,* 392 F.Supp. at 1304–05 (§ 1983 claim based on alleged violation of commerce clause rights).

Other courts dismissing § 1983 suits brought by tribes have done so on other grounds. *See Quinault Tribe of Indians of the Quinault Reservation v. Gallagher,* 368 F.2d at 653 (treaty does not secure freedom from state criminal or civil jurisdiction within the purview of § 1983); *Seminole Tribe of Florida v. Butterworth,* 491 F.Supp. 1015, 1018 n. 5 (S.D.Fla.1980), *aff'd,* 658 F.2d 310 (5th Cir.1981), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1717, 72 L.Ed.2d 138 (1982) (Public Law 280, 67 Stat. 588 (1953), does not secure rights within the meaning of § 1983); *Crow Tribe*

*of Indians v. State of Montana,* 469 F.Supp. 154, 167 (D.Mont.1979) (claims otherwise within the court's jurisdiction under § 1983 barred by the statute generally prohibiting district courts from enjoining state taxes). As one court has stated without deciding, it is a "novel question" whether tribes are persons within the meaning of § 1983. *Yakima Indian Nation v. Whiteside,* 617 F.Supp. 735, 747 & n. 13 (E.D. Wash.1985). At no time between the filing of this action and the Supreme Court's denial of certiorari does the claim that Indian tribes are other persons within the meaning of § 1983 appear insubstantial or frivolous in light of applicable law.

Defendants contend also that even if tribes are persons under § 1983 for some purposes, they may not sue to enforce treaty rights belonging only to individual members. According to defendants, the tribes as entities enjoy no rights under the treaties to hunt, fish, and gather. Defendants offer no authority for their assertion, but instead make a purely semantic argument based on the wording of the treaties, which speak in terms of "Indians" rather than "tribe." I do not find the argument persuasive.

It has long been established that hunting and fishing rights secured by an Indian treaty are communal rights that may be enforced by the tribe on behalf of its members. *Washington v. Washington State Commercial Fishing Vessel Ass'n,* 443 U.S. 658, 679, 99 S.Ct. 3055, 3071, 61 L.Ed.2d 823 (1979); *United States v. State of Washington,* 520 F.2d 676, 688 (9th Cir. 1975), *cert. denied,* 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *Whitefoot v. United States,* 293 F.2d 658, 661–63, 155 Ct.Cl. 127 (1961), *cert. denied,* 369 U.S. 818, 82 S.Ct. 829, 7 L.Ed.2d 784 (1962). That plaintiff tribes may assert treaty rights to hunt and fish is neither a frivolous nor insubstantial proposition.

I conclude that subject matter jurisdiction exists over plaintiffs' § 1983 claim.

### II. *Elements of the Claim*

Because I have found the § 1983 claim meets the requirements of *Bell v. Hood,* I will now consider defendants' motion as if

it had been denominated a motion for judgment on the pleadings under Rule 12(c). Such a motion "may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir.1987) (citing *Flora v. Home Fed. Savings & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir.1982)).[5]

For the purpose of deciding this motion, I take as true the following allegations of the joint amended complaint. I will construe the complaint to favor plaintiffs, the non-moving parties, as required by *Karaganis. Id.*

### A. *Allegations of the Complaint*

Plaintiff bands are federally recognized Indian tribes, each with a government organized pursuant to the Indian Reorganization Act, 25 U.S.C. § 461 *et seq.*, and each a self-governing political entity with the authority to regulate the usufructuary activities of its members. Plaintiffs bring this action on behalf of themselves and their members.

The defendant State of Wisconsin represents its agents who, by their actions or inactions, prevent or interfere with the exercise of plaintiffs' usufructuary rights in the territory ceded by plaintiffs in the Treaties of 1837 and 1842.

The defendant Natural Resources Board is the statutory body which directs and supervises the Wisconsin Department of Natural Resources.

The individual defendants Carroll D. Besadny, James Huntoon, and George Meyer are officials of the Department of Natural Resources who plan, implement, and enforce the department's natural resource management and regulatory programs.

The Treaty of July 29, 1837, 7 Stat. 536, was signed by the Chippewa of Lake Superior, ratified by the United States Senate, and proclaimed by the President on June 15, 1838. Plaintiffs were parties to this treaty, which ceded a large tract of land in Wisconsin to the United States.

Article 5 of the Treaty of 1837 provides: The privilege of hunting, fishing, and gathering the wild rice, upon the lands, the rivers and the lakes included in the territory ceded, is guarantied to the Indians, during the pleasure of the President of the United States.

The Treaty of October 4, 1842, 7 Stat. 591, was signed by the Chippewa of Lake Superior, ratified by the United States Senate, and proclaimed by the President on March 23, 1843. Plaintiffs were parties to this treaty, which ceded the remaining Chippewa lands in Wisconsin to the United States.

Article II of the Treaty of 1842 provides: "The Indians stipulate for the right of hunting on the ceded territory, with the other usual privileges of occupancy, until required to remove by the President of the United States...."

Defendants and their agents have adopted natural resource laws and regulations and enforced them against members of the plantiff bands. As a result of the enforcement of state natural resource laws against tribal members attempting to exercise their usufructuary rights in the territory ceded by the Treaties of 1837 and 1842, tribal members have suffered the following injuries: confiscation of personal property; fines and other monetary penalties; incarceration; and imposition of state license fees as a condition for the exercise of treaty-based usufructuary rights.

As a result of the enforcement of state natural resource laws, plaintiffs and their members have been prevented from or deterred in the exercise of their usufructuary rights to harvest fish, game, and other resources for subsistence and commerce.

Defendants and their agents continue to assert the power to control, regulate, and license the exercise by tribal members of the treaty-based usufructuary rights in the

---

**5.** On filing their motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), defendants did not assert that there is a genuine issue of material fact, or submit matters outside the pleadings to support such an assertion. For purposes of this motion, therefore, I find that there is no dispute as to any material fact.

territory ceded by the Treaties of 1837 and 1842.

### B. *Treaty-based rights under § 1983*

At this point the question is whether a treaty is a law for purposes of § 1983. Phrased another way, it is "whether the phrase 'and laws,' as used in § 1983, means what it says, or whether it should be limited to some subset of laws." *Maine v. Thiboutot*, 448 U.S. at 4, 100 S.Ct. at 2504.

Like a federal statute, a treaty is the "supreme law of the land." U.S. Const. art. VI, cl. 2.[6] It is long-settled law that treaties betwen Indian tribes and the United States are within the ambit of the supremacy clause and Article II of the Constitution.[7] *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 559, 8 L.Ed. 483 (1832) ("The constitution, by declaring treaties already made, as well as those to be made, to be the supreme law of the land, has adopted and sanctioned the previous treaties with the Indian nations and consequently, admits their rank among those powers who are capable of making treaties."); *Menominee Tribe v. United States*, 391 U.S. 404, 412 n. 12, 88 S.Ct. 1705, 1710 n. 12, 20 L.Ed.2d 697 (1968) ("The Treaty of Wolf River was, under Article VI of the Constitution, the 'supreme law of the land.'"). *See also Antoine v. Washington*, 420 U.S. 194, 204, 95 S.Ct. 944, 950, 43 L.Ed.2d 129 (1975); *Felix S. Cohen's Handbook of Federal Indian Law*, 62, 108 (1982 ed.).

Although the supremacy clause "does 'secure' federal rights by according them a priority whenever they come in conflict with state law," the clause itself "is not a source of any federal rights." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 613, 99 S.Ct. 1905, 1913, 60 L.Ed.2d

508 (1979). Accordingly, the supremacy clause in and of itself will not support an action under § 1983. *White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 848, 850 & n. 8 (9th Cir.1984), *cert. denied*, — U.S. —, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987); *Consolidated Freightways Corp. of Delaware v. Kassel*, 730 F.2d 1139, 1144 (8th Cir.), *cert. denied*, 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984). Thus, while a treaty will not form the basis of a § 1983 action merely because it is the supreme law of the land, nonetheless treaties may be "laws" that secure rights cognizable under § 1983.

The evolution of Supreme Court interpretation of the language of § 1983 and relevant policy considerations are persuasive evidence that Indian treaties are laws within the meaning of § 1983. *Thiboutot* and its progeny have broadened the scope of the "and laws" language, providing a cause of action under § 1983 for infringement of rights created by federal statutes, except where (1) there is a comprehensive statutory enforcement scheme precluding a cause of action under § 1983 or (2) the statute evinces no congressional intent to create enforceable rights, privileges, or immunities within the meaning of § 1983. *Wright v. City of Roanoke Redevelopment and Housing Auth.*, — U.S. —, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987); *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694

---

**6.** The supremacy clause reads, in pertinent part: "This Constitution, and the laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the land...." U.S. Const. art. VI, cl. 2.

**7.** Article II reads in pertinent part, "[The President] shall have Power, by and with the Advice of the Senate to make Treaties, provided two thirds of the Senators present concur...." U.S. Const. art. II, § 2, cl. 2. Treaties with Indian tribes have been compared to treaties with for-

eign nations, although Indian treaties differ in important aspects: rules of treaty construction require interpretation of the Indian treaties in favor of the tribal signatories as they understood the treaty terms; Indian treaties require a clear and specific showing of congressional intent to abrogate them by subsequent legislation or treaty. *See Fishing Vessel Ass'n*, 443 U.S. at 675–76, 99 S.Ct. at 3069–70; *Lac Courte Oreilles Band v. Voigt*, 700 F.2d at 358; Cohen, *Felix S. Cohen's Handbook of Federal Indian Law* 63 (1982 ed.).

(1981); *Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502.

[I]f there is a state deprivation of a "right" secured by a federal statute, § 1983 provides a remedial cause of action unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement. "We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy" for the deprivation of a federally secured right.

*Wright,* 107 S.Ct. at 771 (quoting *Smith v. Robinson,* 468 U.S. at 1012, 104 S.Ct. at 3468).

■ The exceptions developed by the *Thiboutot* line of cases, which would preclude a cause of action under § 1983, are not applicable to the Chippewa treaties. Plaintiffs' usufructuary rights were secured by the treaties of 1837 and 1842, which have not been abrogated. *Lac Courte Oreilles Band v. Voigt,* 700 F.2d at 351–58, 361–65. There is no evidence in the treaties of a comprehensive enforcement scheme precluding vindication under § 1983 for the abridgement of treaty rights, nor is there evidence in the treaties that the rights reserved to the tribes and their members were not intended to be enforced.[8] Further, plaintiffs' interests in the rights and exercise of the rights are analagous to property and liberty interests protictible under the Fourteenth Amendment and other civil rights statutes.

Treaties receive more direct, explicit congressional scrutiny than do two other kinds of laws that can support § 1983 suits. After *Thiboutot,* the Supreme Court held that an inmate claiming a violation of the Interstate Agreement on Detainers stated a § 1983 claim. *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703. The significance of that decision for this case lies in the attenuated federal nature of the Detainer Agreement, which was enacted as state law. The only federal involvement was a prior congressional act giving advance approval to such interstate agreements, as required by the compact clause. The Court held that this prior approval, given many years before the Detainer Agreement was enacted, was sufficient to transform the agreement into a law of the United States within the meaning of § 1983. *Id.* at 439–42, 101 S.Ct. at 707–09. Under the reasoning in *Adams,* explicit ratification of the Chippewa treaties by the Senate provides strong grounds for finding that treaties are laws within the meaning of § 1983.

Administrative regulations are a second type of laws that stand on weaker ground than treaties. However, violations of federal regulations can provide a right of action under § 1983. *Wright,* 107 S.Ct. at 774–75 (regulations of the Department of Housing and Urban Development secure enforceable rights under § 1983); *Samuels v. District of Columbia,* 770 F.2d 184, 199 (D.C.Cir.1985). "[A]t least where Congress directs regulatory action ... the substantive federal regulations issued under Congress' mandate constitute 'laws' within the meaning of section 1983." *Samuels,* 770 F.2d at 199. Moreover, Justice Stevens has suggested that the *Thiboutot* analysis of laws within the meaning of § 1983 applies to administrative regulations as well as to statutes: "[I]t is clear that the § 1983 remedy is intended to redress the deprivation of rights secured by all federal laws, including statutes and regulations having the force of law." *Guardians Ass'n v. Civil Service Comm'n of New York,* 463 U.S. 582, 638 & n. 6, 103 S.Ct. 3221, 3251 n. 6, 77 L.Ed.2d 866 (1983) (Stevens, J., dissenting) (citations omitted).

At least one court of appeals has recently considered the possibility that § 1983 may provide a cause of action for the violation of treaty rights. According to the Court of Appeals for the Ninth Circuit, "[i]f the state ... violates these now known and well-delineated [treaty] rights, there would be an actual conflict between state and federal law which might give rise to a § 1983 action." *United States v. State of Washington,* 813 F.2d at 1023. However, the court of appeals found that

---

**8.** The text of the Treaties of 1837 and 1842 is set forth in appendix B to this court's opinion in

*United States v. Bouchard,* 464 F.Supp. 1316, 1364–69 (W.D.Wis.1978).

the tribes' treaty interpretation claims were not cognizable under § 1983 because they were not accompanied by claims that the state violated the treaty rights. *Id.* In contrast, the claims made here by plaintiffs do encompass allegations that state officials have violated treaty-based rights. Plaintiffs' claims pose an actual conflict between state law and federally secured rights and, under the reasoning of the Court of Appeals for the Ninth Circuit, give rise to an action under § 1983.

The period of treatymaking between the United States and Indian tribes encompassed the negotiation and ratification of the Chippewa treaties, and ended in 1871 when Congress passed legislation to prohibit making future Indian treaties. 25 U.S.C. § 71; *Antoine v. Washington,* 420 U.S. 194, 201–02, 95 S.Ct. 944, 949, 43 L.Ed.2d 129 (1975). After 1871, Congress enacted statutes and agreements with Indian tribes which accomplished land cessions or secured tribal rights in much the same way as treaties had prior to that time.[9] *Cohen's Handbook* at 107, 127; *see, e.g., Antoine v. Washington,* 420 U.S. 194, 95 S.Ct. 944 (hunting and fishing rights secured); *Winters v. United States,* 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908) (water rights reserved). Had the Chippewa treaties come about after 1871 and taken the form of agreements or statutes by which the same land was ceded and the same usufructuary rights were secured, plaintiffs could avail themselves of § 1983 to redress violations of those rights. It would be both anomalous and unfortunate to hold that plaintiffs have no cause of action under § 1983 simply because their rights are secured by an older treaty and not by a more recent statute.

### C. *Tribes as "other persons"*

The class of citizens or "other persons" entitled to sue under § 1983 in our modern federal courts has been broadened considerably since enactment of the original § 1 of the Civil Rights Act of 1871, which is now § 1983. Act of Apr. 20, 1871, 17 Stat. 13. Although the Act was proposed to provide blacks a federal avenue for vindication of their constitutional rights in causes of action not permitted by southern state courts, citizens and persons of all races and both sexes have been permitted to sue under § 1983. *See, e.g., Monell v. New York City Dep't of Social Serv.,* 436 U.S. 658, 660, 665–67, 98 S.Ct. 2018, 2020, 2022–24, 56 L.Ed.2d 611 (1978) (plaintiffs are a class of female employees; 1871 Act concerned with Ku Klux Klan violence). Labor unions, corporations, non-profit organizations, and, in certain circumstances, governmental entities, are also "other persons" within the meaning of § 1983. *See Allee v. Medrano,* 416 U.S. at 818 n. 13, 94 S.Ct. at 2202 n. 13 (labor union); *NAACP v. Button,* 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963) (non-profit organization); *Church of Scientology v. Cazares,* 638 F.2d 1272, 1276–80) (5th Cir.1981) (church); *Commonwealth of Pennsylvania v. Porter,* 659 F.2d 306, 327–28 (3d Cir.1981), *cert. denied,* 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982) (states may sue as *parens patriae* in limited circumstances); *Adams v. City of Park Ridge,* 293 F.2d at 587 (corporation).

In the recent *Thiboutot* line of cases, the Supreme Court has attempted to craft a more precise definition of those rights secured by laws within the meaning of § 1983; it has not confined the right of access to § 1983 by the holders of those rights. Further, courts continue to construe § 1983 broadly, in accord with the remedial nature of the statute and its legislative intent. According to the Supreme Court, "[i]n both Houses, statements of the supporters of § 1 corroborated that Congress, in enacting § 1, intended to give a broad remedy for violations of federally protected civil rights." *Monell,* 436 U.S. at 685, 98 S.Ct. at 2033 (footnote omitted). *See also Wright,* 107 S.Ct. at 771; *Smith v. Robinson,* 468 U.S. at 1012, 104 S.Ct. at

---

**9.** Because the House of Representatives wanted to join the Senate and the Executive Branch in formulating United States policy with Indian tribes, legislative compromises resulted in the 1871 Act. *Antoine,* 420 U.S. at 202, 95 S.Ct. at 949. "This meant no more, however, than that after 1871 relations with Indians would be governed by Acts of Congress and not by treaty." *Id.* at 203, 95 S.Ct. at 950 (citations omitted).

3468; Antieau, 1 *Federal Civil Rights Acts* § 52 at 95–96 (2d ed. 1980 & 1986 supp.).

■ Defendants have not cited any authority, and I cannot find any, to support the proposition that, as federal rights holders, the plaintiff tribes should be excluded from the class of legal "other persons" entitled to sue under § 1983. To find that tribes are such "other persons" furthers the broad intent of Congress to provide a federal remedy for the abridgement of federally secured rights, such as plaintiffs' treaty-based usufructuary rights, by persons acting under color of state law. I find and conclude that the plaintiff tribes are "other persons" within the meaning of § 1983.[10]

### D. *Immunity*

The defendant State of Wisconsin argues that a state is not a person within the meaning of § 1983 and that all claims against it based on § 1983 should be dismissed. I agree.

■ According to a majority of the courts of appeals and the Supreme Court, states are not persons within the meaning of § 1983 and cannot be joined as defendants in a federal cause of action based on § 1983. States enjoy sovereign immunity from suit under § 1983, and that immunity has not been abrogated by Congress. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Toledo, Peoria & Western Railroad v. State of Illinois,* 744 F.2d 1296 (7th Cir.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985). *See also Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Kashani v. Purdue University,* 813 F.2d 843 (7th Cir.1987). As the Supreme Court has stated,

[N]either logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 Act compels, or even warrants, a leap ... to the conclusion that Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several states.

*Quern,* 440 U.S. at 342, 99 S.Ct. at 1146.[11]

### III. *Attorneys' Fees*

Plaintiff Lac Courte Oreilles Band alone has petitioned for attorneys' fees under 42 U.S.C. § 1988 on the ground that it prevailed in the first phase of this litigation. Section 1988 provides, in pertinent part: "In any action or proceeding to enforce a provision of section ... 1983 of this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."

Plaintiff's petition for fees must meet a "generous [threshold] formulation" that it has prevailed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (citation and footnote omitted); *Janowski v. International Bhd. of Teamsters Local No. 710 Pension Fund,* 812 F.2d 295, 297 (7th Cir.1987). Success at the statutory threshold entitles plaintiffs to "reasonable" fees. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939.

■ I find that, for purposes of § 1988, plaintiff Lac Courte Oreilles Band has prevailed on a significant issue in what has been called phase one of this litigation.

Plaintiff's success in the first phase is reflected in this court's partial judgment of

---

**10.** Such a holding is in accord with the implicit finding of at least one other district court. *Moe,* 392 F.Supp. at 1304–05 (tribe stated claim under § 1983; tribe as "other person" not addressed). In another circumstance, the Court of Appeals for the Ninth Circuit found that an Indian tribe was a legal person within the meaning of a state tax statute. *Chemehuevi Indian Tribe v. California State Board of Equalization,* 757 F.2d 1047, 1954–55 (9th Cir.), *rev'd on other grounds,* 474

U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985) (per curiam).

**11.** My holding that the state is not a person within the meaning of § 1983 does not eliminate the state from the lawsuit. The plaintiffs have a claim against the state under 28 U.S.C. § 1362 for which the Eleventh Amendment provides no immunity from suit. *Lac Courte Oreilles Band v. State of Wis.,* 595 F.Supp. 1077 (W.D.Wis.1984).

March 6, 1984 (docket number 91), embodying the holding of the court of appeals that usufructuary rights of the La Courte Oreilles Band and its members were reserved under the Treaty of 1837 and the Treaty of 1842, and were not extinguished by the 1850 Executive Order or by the Treaty of 1854. *Lac Courte Oreilles Band v. Voigt*, 700 F.2d at 365.

That the usufructuary rights of all the plaintiffs have survived is a significant issue in this litigation and the necessary predicate to all future proceedings that decide the extent of those rights and the nature of their possible regulation. This issue has dominated recent proceedings on remand in this court: phase I of a trial on the merits was held in December 1985, which resulted in a lengthy delineation of the usufructuary rights, the nature of the permissible exercise of those rights by plaintiffs in the ceded territory, and a decision that the state may regulate the exercise of plaintiffs' usufructuary rights in a manner to be decided. *Lac Courte Oreilles Band v. State of Wis.*, 653 F.Supp. 1420 (W.D.Wis.1987). The upcoming phase II of the trial on remand, to determine the nature of the permissible regulation of exercise by all the plaintiffs of their usufructuary rights, will also be founded on the directive by the court of appeals that plaintiffs' usufructuary rights were retained and continue to exist. Indeed, there can be no more significant and central issue to this entire litigation than that on which plaintiff Lac Courte Oreilles Band prevailed in *Lac Courte Oreilles Band v. Voigt.*

Although I have decided that plaintiff should be awarded attorneys' fees for its success in the first phase of this lawsuit, I will not determine the amount of the award until defendants have had the opportunity to object to the amounts claimed by plaintiff in its fee petitions. I will give defendants the opportunity to make such objections.

## ORDER

Defendants' motion, denominated a motion to dismiss plaintiffs' claims under 42 U.S.C. § 1983 for want of subject matter jurisdiction, is DENIED. Defendants' motion to dismiss the State of Wisconsin as a defendant is GRANTED with respect to plaintiffs' § 1983 claim only.

The petitions for attorneys' fees of plaintiff Lac Courte Oreilles Band for phase one of this litigation are GRANTED.

No later than July 8, 1987, defendants are to serve and file their objections to plaintiff's specific requests for attorneys' fees and costs. Plaintiff Lac Courte Oreilles Band may have until July 22, 1987, in which to serve and file a reply to the objections.