155 F.3d 1150
 98 Cal. Daily Op. Serv. 7249, 98 Daily Journal
D.A.R. 10,049
NATIVE VILLAGE OF VENETIE IRA COUNCIL; Native Village of
Fort Yukon IRA Council; Nancy Joseph; Margaret
Solomon, Plaintiffs-Appellants,
v.
STATE OF ALASKA; John Pugh; Karen Perdue, in her official
capacity as Commissioner of Health & Social
Services, Defendants-Appellees.
 No. 96-35699.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 16, 1998.
Decided Sept. 17, 1998.
 
 William E. Caldwell, Alaska Legal Services Corporation, Fairbanks, Alaska, for plaintiffs-appellants.
 D. Rebecca Snow, Office of Attorney General, Fairbanks, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska; H. Russel Holland, District Judge, Presiding. D.C. No. CV-86-00075-HRH.
 Before: FARRIS, O'SCANNLAIN, and HAWKINS, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 The governing bodies of the Native Alaskan villages of Venetie and Fort Yukon as well as two individual residents of those villages won declaratory relief in district court requiring the State of Alaska to give full faith and credit to adoption decrees issued by the villages. The villages now appeal the district court's denial of their motion for attorneys' fees under 42 U.S.C. § 1988. We reverse and remand for an award of attorney's fees.
 
 BACKGROUND
 
 2
 In November 1986, Venetie and Fort Yukon as well as two residents of those villages filed suit against the state of Alaska asserting claims under the Indian Child Welfare Act (25 U.S.C. § 1911(d)), 42 U.S.C. § 1983, and the Fourteenth Amendment. The claims arose out of the state's refusal to recognize adoptions that were being executed and recorded by the Venetie and Fort Yukon tribal courts. The villages claimed that Alaska's policy violated the full faith and credit provision of the Indian Child Welfare Act and deprived them of their "federally protected right of self-governance, their constitutional right to equal protection of the laws and their substantive due process and freedom of association rights to determine the structure of their family units according to the customs and traditions of the Athabaskan peoples."
 
 
 3
 In May 1988, the district court granted summary judgment in favor of Alaska. Native Village of Venetie v. Alaska, 687 F.Supp. 1380 (D.Alaska 1988) (Venetie I ). Without ever addressing the villages' constitutional claims, the district court concluded that the Venetie and Fort Yukon courts had not followed necessary procedures under the ICWA. Id. at 1396-97. The Ninth Circuit affirmed the dismissal of the tribes' claims to the extent that they had sought money damages but reversed the claims seeking prospective injunctive or declaratory relief. Native Village of Venetie v. Alaska, 944 F.2d 548 (9th Cir.1991) (Venetie II ). The court implied a private right or action from § 1911(d) of the ICWA and concluded that both the villages and their individual residents could sue to enforce the ICWA's full faith and credit provisions. Id. at 552-54. On the merits, the Ninth Circuit held that Alaska would be required to give full faith and credit to Venetie's and Fort Yukon's adoption decrees if those villages could be considered the equivalent of sovereign native tribes. Id. at 558-59. The case was remanded for a determination of the tribal status of the native villages. Because the district court had not reached any of the plaintiffs' constitutional claims, the Ninth Circuit did not reach the merits of those claims. Id. at 554.
 
 
 4
 After a five day trial, the district court concluded on remand that the native village of Venetie met the legal test for sovereign tribes. Native Village of Venetie v. Alaska, Nos. F86-0075 & F87-0051, 1994 WL 730893, at * 21 (D.Alaska Dec. 23, 1994). The court further concluded that adoption decrees issued by the villages must therefore be afforded full faith and credit under the Indian Child Welfare Act, 25 U.S.C. § 1911(d). Id.
 
 
 5
 at * 21-22. Alaska later stipulated that Fort Yukon could also meet the requirements for tribal status. The district court entered a final judgment declaring that Alaska must give full faith and credit to the adoption decrees of both the Venetie and Fort Yukon tribes.
 
 
 6
 The villages filed a motion for costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b). The villages asserted that their complaint sought relief under § 1983 and that, although their constitutional claims were never decided, their rights to self-governance and under the ICWA were implemented by § 1983 and were vindicated in the suit. The district court granted costs but denied attorneys' fees, concluding that "the parties did not litigate and the court did not decide nor grant any relief under 42 U.S.C. § 1983." The villages appealed.
 
 DISCUSSION
 
 7
 The district court's denial of attorneys' fees is reviewed for an abuse of discretion. See Corder v. Gates, 104 F.3d 247, 249 (1996). However, any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewed de novo. See id. Factual findings underlying the district court's decision are reviewed for clear error. See id.
 
 
 8
 Section § 1988(b) of Title 42 provides that "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...."[1] As we recognized in United States v. Washington, "the dispositive question in this appeal is whether the Tribes have stated a claim under 42 U.S.C. § 1983 for which attorney's fees are available under 42 U.S.C. § 1988." 813 F.2d 1020, 1022-23 (9th Cir.1987) (footnotes omitted).
 
 
 9
 To the extent that either this court in Venetie II or the district court on remand granted relief pursuant to § 1983, the villages are undoubtedly entitled to attorneys' fees under 42 U.S.C. § 1988. However, we have also recognized that even unadjudicated claims can support an award of attorneys' fees under § 1988 as long as those claims are substantial and were not alleged solely to support the fee award. See Hoopa Valley Tribe v. Nevins, 881 F.2d 657, 661 (9th Cir.1989) (citing Maher v. Gagne, 448 U.S. 122, 130-33, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)). Therefore, the villages need only show that at least one of their claims falls within the remedial scheme of § 1983 and remained a sufficiently substantial claim throughout the litigation to trigger the fee-shifting provision of § 1988.
 
 
 10
 a. The ICWA Claim
 
 
 11
 In considering our jurisdiction in Venetie II, we held that § 1911(d) of the ICWA gave both the Native villages and their individual residents private rights of action in federal court. Venetie II, 944 F.2d at 553. We reasoned that, given Congress's understanding at the time of passage that statutes passed for the benefit of Indian tribes would "be liberally construed in favor of such tribes," Congress would have expressly precluded a federal cause of action had it intended that none be recognized. Id. at 554. After finding "no reason that Congress would not have intended to give Indian tribes access to federal courts to determine their rights and obligations under the Indian Child Welfare Act," the court held that "Congress's intention to create a tribal cause of action under the Act can be inferred." Id.
 
 
 12
 There are two issues necessary to determining whether the villages' ICWA claims are enforceable by § 1983: 1) whether the federal statute was intended to create an enforceable right; and 2) whether the statutory scheme indicates an intent to preclude resort to § 1983. See Wilder v. Virginia Hospital Ass'n, 496 U.S. 498, 508 n. 9, 110 S.Ct. 2510, 110 L.Ed.2d 455 (recognizing an exception to general rule that § 1983 provides remedy for violation of federal statutory rights "only when Congress has affirmatively withdrawn the remedy"). The Ninth Circuit expressly concluded in Venetie II that the ICWA created a right enforceable in federal court. The only remaining question is whether the ICWA included a sufficiently exhaustive remedial scheme within the underlying statute to preclude enforcement under § 1983. See Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984).
 
 
 13
 In support of its conclusion that the statute created an enforceable federal right, the court in Venetie II noted that "[a]s the primary mechanism for advancing its objectives in the [Indian Child Welfare] Act, Congress created a comprehensive jurisdictional scheme for the resolution of custody disputes involving Indian children." 944 F.2d at 555. The court stopped well short, however, of finding that the ICWA contains "a remedial scheme that is sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983." Blessing v. Freestone, 520 U.S. 329, ----, 117 S.Ct. 1353, 1362, 137 L.Ed.2d 569 (1997) (internal quotation omitted). The Supreme Court in Blessing noted that it has "[o]nly twice found a remedial scheme sufficiently comprehensive to supplant § 1983." Id. In both of those cases, the federal statutes included either specific provisions authorizing private persons to sue or extensive and "carefully tailored" administrative procedures followed by judicial review of disputes. Id. 117 S.Ct. at 1362-63.
 
 
 14
 The ICWA, however, contained no such specific enforcement schemes. This court in Venetie II had to imply a federal cause of action precisely because none was explicitly included in the statutory scheme. It would seem strange indeed for a statute to include a remedial scheme sufficiently comprehensive to preclude a § 1983 suit where an enforceable federal right had to be implied by the court. The ICWA, therefore, does not provide any exclusive means for enforcing the rights recognized in § 1911(d). Although it did not mention § 1983 as the intended mechanism for enforcement, this court's decision in Venetie II must be read to recognize the villages' suit as a private right of action under § 1983 for the enforcement of a federal right created by § 1911. The villages' claims based on violations of the ICWA, which provided the basis for the district court's declaratory judgment, are within the scope of § 1983 and support an award of fees under § 1988.
 
 CONCLUSION
 
 15
 In finding an implied private right of action within § 1911, this court implicitly held that the villages' claims under the ICWA could be enforced through § 1983. Because it was under § 1911(d) that the district court awarded declaratory relief, the villages' § 1983 claims based upon violations of that provision provide a basis for the award of fees.
 
 
 16
 REVERSED AND REMANDED FOR AWARD OF ATTORNEY'S FEES.
 
 
 
 [1]
 At oral argument, counsel for the State of Alaska argued that the court lacked subject matter jurisdiction to award fees because the tribes were not "citizens or other persons" and therefore could not sustain a § 1983 action. The Supreme Court has liberally construed "other persons" for the purposes of § 1983 to include labor unions, see Allee v. Medrano, 416 U.S. 802, 819 n. 13, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974), corporations, Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 881 n. 9, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985), and non-profit organizations, NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Moreover, Ninth Circuit authority supports the conclusion that the plaintiff tribes are "other persons" entitled to sue under § 1983. See Chemehuevi Indian Tribe v. California State Board of Equalization, 757 F.2d 1047, 1054-55 (9th Cir.), rev'd on other grounds, 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985) (per curiam) (holding that tribe is "person" for purposes of state tax statute). Such a conclusion is also consistent with the broad intent of Congress to "provide a federal remedy for the abridgement of federally secured rights." Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Wisconsin, 663 F.Supp. 682, 691 (W.D.Wis.1987); see also Mille Lacs Band of Chippewa Indians v. Minnesota, 853 F.Supp. 1118, 1127 (D.Minn.1994)